## NORMAN W. COUCH ET AL. *v.* ZONING COMMISSION OF THE TOWN OF WASHINGTON

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued May 4—decided June 16, 1954

*David Cramer,* with whom was *Clayton L. Blick,* for the appellant (defendant).

*Walter M. Pickett, Jr.,* for the appellees (plaintiffs).

O'SULLIVAN, J. The town of Washington is predominantly rural in character. The zoning regulations now in force in the town became effective on December 15, 1939. Of the zonal classifications into which the town is divided, two are designated for business. Washington Zoning Regs., § 1 (1939, as amended). These are known as the Washington Depot and the New Preston Village districts. Each contains a wide variety of commercial establishments. Another classification is called the farming and residence district. It consists of all areas not otherwise zoned. Most of the land abutting route 25, an improved state highway running through the town and connecting Litchfield and New Milford, is presently zoned for farming and residential purposes.

As far back as February, 1951, the defendant, hereinafter called the commission, became concerned

with the limited area available for the location of new
commercial enterprises. By August of that year,
the members of the commission had reached the con-
clusion that immediate steps should be taken to in-
crease the business areas, either by enlarging the
existing districts or by creating new ones. From
then on, the commission held numerous meetings and
engaged in many discussions aimed at the ultimate
setting up of additional zonal space for business pur-
poses. In seeking a solution of the problem, the com-
mission had the benefit of suggestions emanating
not only from its own membership but also from
various civic organizations in the community. But,
whatever the source, the various suggestions were
thoroughly explored by the commission through dis-
cussion and through personal examination of the
areas to be affected.

At a meeting held on September 9, 1952, the com-
mission received a petition signed by over seventy
residents, requesting the zoning for business of a
strip of land on each side of route 25 for the entire
seven miles of its course through the town. A pub-
lic hearing was held on the petition on October 3,
1952. Approximately one hundred persons were in
attendance, and everyone who wished to express his
views had ample opportunity to do so. While most
of those present were favorably inclined to the idea,
the members of the commission questioned the wis-
dom of devoting such a lengthy strip of land to
business uses. After further discussion among them-
selves, they reached the conclusion that two sections
along route 25 should be zoned for business. Ac-
cordingly, at a meeting held on October 16, 1952, the
commission took the following action respecting
one of the two sections: "It was then voted to estab-
lish a new business district on Route 25, from the

New Milford Town line to the present New Preston Business District; the same to be of a width of 600 ... feet on both sides of said route, measured from the center of the highway (or a total width of 1200 ... feet including the highway)." At a meeting held on the next day, the commission, acting upon the other section, "unanimously resolved to establish a Business District on Route 25, the more northerly end to be the west bank of the Shepaug River at that point where crossed by Route 25, the more southerly end to be at the intersection of Route 25 and of a road known at this time as Couch Road and running in a northerly direction from the intersection and into the Town of Warren; and it was further resolved that the said Business District be of a width of 600 ... feet on both sides of Route 25, as measured from the center of the highway and between the designated points on Route 25 (or a total width of 1200 ... feet including the highway). It was further resolved that the said Business District should be known as 'The Woodville Business District,' and that the more southerly Business District voted at the meeting of October 16, 1952 be known as 'The Marble Dale Business District.' "

The minutes of the meeting of October 17, 1952, also state: "The Zoning Commission bases its decision to establish the two said Business Districts upon the following reasons: 1. The growing need for additional business area in the Town. 2. Route 25 presents the most adaptable locations. 3. Two separate business districts on Route 25 are desirable. 4. The two areas chosen seem unlikely for future residential or farming development, due to ever-increasing heavy traffic."

A duly warned public hearing on the two districts was held on November 10, 1952. Several persons

spoke for and several against the plan. After the hearing, the commission met in executive session and unanimously voted to approve the plan for the reasons specified in the minutes of the meeting of October 17, 1952.

The plaintiffs, describing themselves as residents and taxpayers of the town, appealed to the Court of Common Pleas from the action of the commission in adopting the changes in the zoning regulations. The vital conclusion upon which the court relied in sustaining the appeal was that the commission had acted arbitrarily and illegally in that (1) the creation of the zones was not in accordance with a comprehensive plan and therefore was violative of § 837 of the General Statutes, and (2) the vote of the commission in establishing the zones was taken before the public hearing required by § 157b of the 1951 Cumulative Supplement (as amended, Cum. Sup. 1953, § 282c). Whether the court was correct in its conclusion is determinative of the appeal which the commission has taken to this court.

Section 837 provides in part: "[All zoning] regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land

throughout [the] municipality." The gist of this
statute is that zoning regulations must possess two
characteristics: first, they must be expressive of a
plan which is comprehensive, and second, they must
promote the public welfare. *Fairlawns Cemetery
Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434,
439, 86 A.2d 74. The second point does not require
any examination on our part. The four reasons
recorded by the commission in its minutes clearly
indicate that the regulations are aimed at the pro-
motion of the public welfare of the town. The first
requirement, however, is entitled to a more extended
discussion.

A "comprehensive plan" means "a general plan to
control and direct the use and development of prop-
erty in a municipality or a large part of it by divid-
ing it into districts according to the present and po-
tential use of the properties." *Bishop* v. *Board of
Zoning Appeals,* 133 Conn. 614, 618, 53 A.2d 659;
*State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 652, 41
A.2d 908; *Bartram* v. *Zoning Commission,* 136 Conn.
89, 93, 68 A.2d 308. The comprehensive plan to which
§ 837 refers may originate in either of two agencies.
Chapter 45 of the General Statutes authorizes muni-
cipalities to create planning commissions. § 854.
These commissions, when established, are empower-
ed to prepare, adopt and amend plans of develop-
ment for their respective communities. § 856. No
municipality is obliged, however, to establish a
planning commission, and the statutory authority
granted to towns, cities and boroughs under chapter
43 for the establishment of a zoning commission is
not conditioned on a simultaneous exercise of the
powers granted under chapter 45. When, therefore,
a community establishes a zoning commission under
chapter 43 but fails to take any action under chapter

45 to create a planning commission, the former commission necessarily has the power to set up a comprehensive plan of its own. See *Hills* v. *Zoning Commission,* 139 Conn. 603, 610, 96 A.2d 212.

The comprehensive plan for the town of Washington is to be found, then, in the scheme of the regulations themselves. Thus, provision is made therein for two districts devoted to business purposes. Any extension of such districts or the establishment of any new ones which are reasonably necessary to provide space for additional commercial enterprises is within the comprehensive plan presently in effect in the town. See *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. In view of the overcrowded conditions prevalent in the Washington Depot and the New Preston Village business districts, the creation of more space for business uses was in accord with the comprehensive plan. In this respect the court was in error in holding that the commission acted arbitrarily and illegally.

The other ground upon which the court relied was that the commission had voted to establish the two districts before the public hearing was had. Chapter 43 of the General Statutes, as pointed out above, deals with the subject of zoning. Under § 156b of the 1951 Cumulative Supplement (as amended, Cum. Sup. 1953, § 280c), any town, city or borough was authorized to set up a zoning commission. It was by virtue of a predecessor of this section that the town of Washington created the defendant. Under § 157b (as amended, § 282c), zoning commissions are empowered, among other things, to provide for the manner in which zoning regulations and the boundaries of zoning districts shall be "established and amended or changed." The section then states the procedure for the commission to follow when action

is to be taken with respect to a regulation or a boundary. "No such regulation or boundary shall become effective or be established until after a public hearing in relation thereto held by the zoning commission or a committee thereof . . . at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in [the] municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town, city or borough clerk, as the case may be, in such municipality for public inspection at least ten days before such hearing. . . ."

Compliance with the statutory procedure is a prerequisite to any valid change in zonal boundaries. *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 250, 83 A.2d 201; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 84, 103 A.2d 814. The provisions of § 157b were required to be honored to validate any proposed action. *Jack* v. *Torrant,* 136 Conn. 414, 419, 71 A.2d 705. Among these provisions was one requiring the commission to hold a public hearing upon the change in boundaries. The plaintiffs concede that a public hearing was, in fact, held and that they, as well as all others in attendance, had an opportunity to speak against the adoption of the new zones. They maintain, however, that the hearing was an idle ceremony since, they assert, the commission had previously voted to establish the zones.

The purpose of the requirement of a public hearing is obvious. The alteration of zonal boundaries

may seriously affect the property rights of those owning land within or near the area involved. Hearings play an essential role in the scheme of zoning and in its development. 1 Yokley, Zoning Law & Practice (2d Ed.) p. 267. They furnish a method of showing to the commission the real effect of the proposed change upon the social and economic life of the community. Id., p. 268. Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor. See *Lordship Park Assn.* v. *Board of Zoning Appeals,* 137 Conn. 84, 90, 75 A.2d 379.

If the public hearing was had merely to comply with a statutory requirement and if the commission had theretofore resolved that, regardless of what might be developed by those in attendance, the zones were to be established as previously determined, the action of the commission might well be classified as arbitrary. The ultimate decision to effect a change in boundaries had to await the hearing, at which the public were privileged to express themselves. This does not mean, however, that the commission was powerless, prior to the hearing, to take tentative action on anything affecting the proposed change. We point out that it was not dealing with a specific petition presented by residents desiring to obtain additional business areas; the project, aimed to increase those areas, was the commission's own brain child and for almost two years had commanded its attention. If, under these circumstances, it were prohibited from reaching any opinion until after a hearing was held, progress in zonal development in the town might be seriously hamstrung.

The commission, of necessity, had to pursue some course as to the plan which it had evolved to solve

the municipal need. It had to take a tentative position in advance of the hearing, because the statute required it to file a copy of its "proposed" regulation or boundary in the town clerk's office. Cum. Sup. 1951, § 157b (as amended, Cum. Sup. 1953, § 282c). This is far from saying that its position was rendered unalterable. Weaknesses in the plan might be exposed at the hearing, and if this occurred the commission should be guided accordingly. In the case at bar, the hearing was not only held but a vote by the commission was subsequently taken, as the statute required. The case of *Jack* v. *Torrant*, 136 Conn. 414, 418, 71 A.2d 705, relied upon by the plaintiffs to demonstrate the illegality of the commission's action, goes no further than to hold that the vote of the zoning authority, to be valid, must be a vote taken after a public hearing. In the *Jack* case no vote at all was taken at that time. In the case at bar the commission did not register its official vote upon the change until after the public hearing had been held, and the change in zones was not effective until that vote was taken.

The plaintiff's main claim on the subject under discussion is that the minutes of the meetings of October 16 and 17, 1952, conclusively show that the minds of the members of the commission had been made up as of those dates. The phraseology of the minutes might be stretched to support that claim. It must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions. Lest the property rights of the people be illegally or arbitrarily affect-

ed, scrutiny is always justified to prevent the improper use of the extraordinary police power upon which zoning rests. But once the statutory steps have been taken by the commission in creating a change, and no injustice to anyone is discernible, a poorly expressed minute should not ordinarily undo the work which otherwise bears the stamp of legality. The second ground upon which the court held the commission's act to have been arbitrary and illegal was erroneous.

The history of zoning legislation indicates a clear intent on the part of the General Assembly that, subject to certain underlying principles, the solution of zoning questions is for the local agencies. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746. "The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Courts must not and legally cannot substitute their own discretion for the wide and liberal discretion enjoyed by zoning agencies. Id., 709; *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 731, 97 A.2d 562.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.