JEANNE E. SUMM ET AL. *v.* ZONING COMMISSION OF THE TOWN OF RIDGEFIELD

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 1—decided November 7, 1962

*John V. Donnelly,* for the appellant (plaintiff The Jed Company).

*W. Bradley Morehouse,* with whom, on the brief, was *Paul C. Shafer, Jr.,* for the appellants (named plaintiff et al.).

*Romeo G. Petroni,* with whom was *Reed F. Shields,* for the appellee (defendant).

SHEA, J. The plaintiffs have appealed from a judgment of the Court of Common Pleas dismissing their appeal from the action of the defendant commission in amending the zoning regulations of Ridgefield to permit the use of land by research and development laboratories under a special permit to be issued by the commission.

Zoning was adopted in Ridgefield in 1946, pursuant to what is now chapter 124 of the General Statutes. The zoning commission thereafter adopted zoning regulations and divided the town into zon-

ing districts. In December, 1960, the regulations were amended by adding § 9A, authorizing the commission, subject to specified standards and conditions, to issue a special permit for the use of land for research and development laboratories in any zone in the town. A research and development laboratory is defined as a "private commercial enterprise engaged exclusively in the pursuit of scientific research and development, including research concerning, and development of, manufactured, processed or compounded products." There are extensive provisions concerning the buildings, structures, facilities and equipment which can be used on property for which a special permit for a research and development laboratory has been issued. Commercial manufacture, production or fabrication of products for sale, lease or disposition other than for testing purposes is expressly forbidden. Also prohibited is the use of land for any laboratory which might create a risk of harm or damage to persons, structures or plant growth beyond the boundaries of the land. Safeguards are established to prevent any use which would cause noise, smoke, dust, odor and certain other specified conditions which are generally considered to be objectionable in a modern residential neighborhood.

Among the exacting requirements to be met to obtain a special permit are the following: Each property must consist of an area of at least forty acres in single ownership; the area which can be covered by buildings is limited; the height of structures and their location on the land with relation to street lines, side-lot lines and rear-lot lines are restricted; prescribed space to park motor vehicles must be provided; buildings, structures and parking areas must be screened by trees, shrubbery or other

means so as substantially to conceal them from surrounding properties at all seasons of the year; special conditions concerning access to and egress from the premises must be met; on the issuance of a special permit, the premises must be devoted exclusively to the use specified, together with the uses accessory thereto; plans concerning sanitary conditions on the premises must be submitted to the town director of health; the applicant must furnish to the commission any information reasonably required by it to enable it to determine whether the proposed use meets the requirements for a special permit. The regulation contains a provision that it shall be construed and administered so as to promote the health, safety, and economic and general welfare of the town as a whole and so as to minimize any detriment to the convenience and property values of property owners in the vicinity. The commission is required in each case, before it issues a permit, to find as a fact that such objectives are met. If a permit is issued, the commission is given continuing authority to inspect the premises at all reasonable times thereafter and to enforce continued compliance with the regulation and with the requirements of the permit. Authority to permit the use of land for laboratories is limited to a total of 240 acres in the entire town.

The action of the zoning commission in adopting the amendment was unanimous. In accordance with § 8-3a of the General Statutes, when the amendment was proposed, it was referred to the planning commission for consideration, and that commission voted unanimously to recommend its adoption by the zoning commission.

The plaintiffs, as owners of residential property in the town, could be adversely affected by the adop-

tion of § 9A of the regulations, if it involved a change in the comprehensive plan of zoning for the town, and are therefore entitled to appeal, as aggrieved persons, from the action of the commission. *Mills* v. *Town Plan & Zoning Commission,* 145 Conn. 237, 241, 140 A.2d 871. The plaintiffs claim that the zoning commission, in adopting § 9A, exceeded the powers vested in it by the 1959 Public Acts, No. 614, § 2, which amended § 8-2 of the General Statutes. Section 8-2 authorizes the zoning commission of each municipality to regulate the use of buildings, structures and land for trade, industry, residence or other purposes; to divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of zoning; and to regulate within such districts the erection, construction, reconstruction or alteration of buildings or structures and the use of land. Prior to 1959, § 8-2 also contained the following provision: "All such regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district." For many years, this quoted language had remained unchanged. Public Acts 1925, c. 242, § 2; Rev. 1930, § 424; Rev. 1949, § 837. By the 1959 Public Acts, No. 614, § 2, it was amended to read: "All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or use of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning

commission or zoning board of appeals, whichever commission or board the regulations may designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values."

The amendment of § 8-2 of the General Statutes in 1959 was subsequent to the decision of this court in *Pecora* v. *Zoning Commission*, 145 Conn. 435, 144 A.2d 48, wherein we reviewed the action of the zoning commission of Trumbull in changing the zoning of a tract of land from residence to commercial, thereby authorizing its use for a regional shopping center. The zoning commission in that case attached to the land in question certain special and additional requirements not applicable in other commercial zones in Trumbull. The claim was made that the commission in attaching these special requirements violated the portion of § N10 of the November, 1955, Supplement, the then existing statute, which required that "[a]ll . . . regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district." We held that this provision of the statute related only to buildings or structures and that the requirements imposed by the zoning commission of Trumbull affected the land itself. We concluded (p. 441) that the special requirements imposed by the commission really affected the land use rather than any buildings or structures and that therefore the commission did not act in violation of the statute. The claim was also made in the *Pecora* case that the special requirements could not be imposed by the commission under the zoning regulations because they fell within the exclusive jurisdiction of the zoning board of appeals. In

answer to this claim, we said (p. 442) that there was nothing to show that the grant of power to the zoning board of appeals to make such requirements was an exclusive one.

The *Pecora* case was decided in July, 1958. We can assume that the legislature was aware of the interpretation which we placed on the statute. *Herald Publishing Co.* v. *Bill*, 142 Conn. 53, 63, 111 A.2d 4; *Forman Schools, Inc.* v. *Litchfield*, 134 Conn. 1, 6, 54 A.2d 710; *Stamford* v. *Stamford*, 107 Conn. 596, 606, 141 A. 891. The plain purpose of the legislature in adopting the 1959 amendment to § 8-2 of the General Statutes was to provide a means by which the result reached by us in the *Pecora* case could be accomplished whether the zoning requirement affected buildings and structures or land uses. The insertion of the phrase "or use of land" in the third sentence of § 8-2 is clear evidence of an intention to require that regulations for the use of land, like regulations for each class of buildings or structures, be uniform. This change in the statute was made to eliminate the distinction which had been drawn by us in the *Pecora* case. At the same time, however, the legislature added the provision authorizing the adoption by a zoning commission of regulations which would allow a use subject to standards set forth in the regulations and under special conditions, after the obtaining of a special permit. The power of local zoning authorities was thus broadened, and they were allowed to impose certain standards and conditions on the use of property when the public interest required it. Under the amended statute, the zoning commission could by regulation reserve to itself or delegate to any of the other specified agencies power to grant the special permit or special exception.

In the law of zoning, "special permit" is used interchangeably with "special exception." *Rosenfeld* v. *Zoning Board of Appeals*, 19 Ill. App. 2d 447, 154 N.E.2d 323; *Oursler* v. *Board of Zoning Appeals*, 204 Md. 397, 104 A.2d 568. We have said that a special exception allows a property owner to put his property to a use which the regulations expressly permit, and that the conditions permitting the use must be found in the zoning regulations themselves. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals*, 141 Conn. 632, 636, 109 A.2d 256; *Mitchell Land Co.* v. *Planning & Zoning Board of Appeals*, 140 Conn. 527, 531, 102 A.2d 316. The terms "special permit" and "special exception" as used in § 8-2 of the General Statutes have the same meaning; they can be used interchangeably.

In the light of the history, background and purpose of the statutory change and the circumstances which led to its adoption, there can be no doubt that the defendant commission, in adopting § 9A, the regulation in question, had authority to do so under the 1959 amendment to § 8-2.

The plaintiffs also claim that § 9A is invalid because it was not enacted in accordance with the comprehensive plan. The statute authorizing the adoption of zoning regulations directs that they shall be made in accordance with a comprehensive plan. General Statutes § 8-2; *Purtill* v. *Town Plan & Zoning Commission*, 146 Conn. 570, 572, 153 A.2d 441. A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. *State* v. *Huntington*, 145 Conn. 394, 399, 143 A.2d 444; *Miller* v. *Town Planning Commission*, 142 Conn.

265, 269, 113 A.2d 504. The basic purpose of requiring conformance to a comprehensive plan is to prevent the arbitrary, unreasonable and discriminatory exercise of the zoning power. *Miller* v. *Town Planning Commission,* supra, 268. The requirement serves as an effective brake on spot zoning. *Clark* v. *Town Council,* 145 Conn. 476, 486, 144 A.2d 327. The comprehensive plan of zoning for Ridgefield is to be found in the scheme of the zoning regulations themselves. *Woodford* v. *Zoning Commission,* 147 Conn. 30, 33, 156 A.2d 470. The zoning regulations of Ridgefield divide the town into various districts and prescribe for each district the uses to be permitted. In 1960, when § 9A of the regulations was adopted, there were, in the town, eight classes of residence zones, one class of business zone, and one class of light industry zone; that is, there was but limited provision for business and industry. Apparently, the zoning commission felt that a change in the regulations was needed to make available a limited area in which research laboratories could be conducted. The action of the commission indicates a careful, searching inquiry into the wisdom and propriety of the change. It is apparent that the commission considered this added use to be in the best interests of the town and its residents generally. At the same time, specified standards and conditions, under unusual terms and safeguards, are imposed by the regulation, and the procedure outlined in it appears to afford ample protection to anyone who may be immediately affected by a particular application. Those who were charged with the duty of making the legislative decision, namely, the members of the zoning commission, reached a decision after full and conscientious consideration, and nothing has been submitted

or advanced by the plaintiffs which would justify interference by the courts.

The entire history of zoning legislation indicates a clear intention on the part of the General Assembly, subject to certain underlying principles, to leave the solution of zoning questions to the local authority. *Couch* v. *Zoning Commission,* 141 Conn. 349, 359, 106 A.2d 173. That authority is endowed with a wide and liberal discretion. *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 62, 89 A.2d 746; *Mallory* v. *West Hartford,* 138 Conn. 497, 505, 86 A.2d 668. The conditions and circumstances surrounding the adoption of zoning regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. Courts must not, and legally cannot, substitute their discretion for the wide and liberal discretion enjoyed by zoning agencies. *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454; *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 71, 157 A.2d 103; *Wade* v. *Town Plan & Zoning Commission,* 145 Conn. 592, 595, 145 A.2d 597; *Suffield Heights Corporation* v. *Town Planning Commission,* 144 Conn. 425, 427, 133 A.2d 612; *Couch* v. *Zoning Commission,* supra. Courts can grant relief on appeal only where the local authority has acted arbitrarily or illegally and has thus abused the discretion vested in it. *Gordon* v. *Zoning Board,* 145 Conn. 597, 604, 145 A.2d 746. The plaintiffs have failed to show that § 9A of the regulations was not adopted in accordance with the comprehensive plan.

The plaintiffs contend that § 9A violates the principles of zoning by creating what is known as a "floating zone," that is, a zone without boundaries. We are not unmindful of the conflicts which have arisen in other jurisdictions over the authority to establish floating zones. In support of this method of zoning, see *Rodgers* v. *Tarrytown,* 302 N.Y. 115, 96 N.E.2d 731 (1951); *Huff* v. *Board of Zoning Appeals,* 214 Md. 48, 133 A.2d 83 (1957); contra, *Rockhill* v. *Chesterfield,* 23 N.J. 117, 128 A.2d 473 (1957); *Eves* v. *Zoning Board of Adjustment,* 401 Pa. 211, 164 A.2d 7 (1960). In all of the cited cases, the court was considering an actual change in zone. The principle involved in them has no application here, because § 9A does not affect zone district lines in any way. In the present case, there has been no change in the zoning of any particular property. Section 9A merely adds to the list of permissible uses in any zone a new use—that of research and development laboratories. See *Nappi* v. *La Guardia,* 184 Misc. 775, 779, 55 N.Y.S.2d 80, aff'd, 269 App. Div. 693, 54 N.Y.S.2d 722, aff'd, 295 N.Y. 652, 64 N.E.2d 716.

The claim has also been made that § 9A permits an industrial use in a residence zone, that it is a fundamental departure from the statutory principle of district zoning, and that it may lead to the destruction of the whole principle of zoning as embodied in the statutes. Whether a research laboratory as defined by § 9A constitutes an industrial use may be open to debate. That question aside, the plaintiffs, in advancing their claims, overlook the limitations and restrictions which are imposed by the language of the 1959 amendment to § 8-2 of the General Statutes. The power of the zoning commission to grant a special permit even when the stand-

ards prescribed in § 9A have been satisfied is still subject to the additional conditions stated in the statute. It is true that the standards set forth in § 9A must be satisfied to obtain a permit, but it is also true that the permit is subject "to conditions necessary to protect the public health, safety, convenience and property values." General Statutes § 8-2. These conditions must always be present, for the right to zone rests on the reasonable exercise of the police power in the public interest. *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 657, 153 A.2d 822. Section 9A of the regulations is not subject to attack on the ground that the addition of another permissible use in every zone is in violation of the requirement of district zoning. See cases such as *Fox* v. *Zoning Board of Appeals,* 146 Conn. 70, 147 A.2d 472.

We are not now called on to decide whether, as a general proposition, conformance with § 9A of the Ridgefield regulations will authorize the issuance of a special permit for a research and development laboratory in any given situation. Our inquiry here is limited to the validity of § 9A. It is conceivable that some particular applicant may be unable to satisfy all the statutory requirements, even though he may be in a position to meet the standards fixed under § 9A. Whether all the conditions and requirements are satisfied in a specific case must be determined by the circumstances of that case.

There is no error.

In this opinion the other judges concurred.