ROBERT L. LUERY ET AL. *v.* ZONING BOARD OF THE CITY OF STAMFORD ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued April 4—decided November 20, 1962

*Julius B. Kuriansky,* for the appellants-appellees (plaintiffs).

*Maurice J. Buckley,* with whom, on the brief, was *Paul C. Jamieson,* for the appellee-appellant (defendant American Machine and Foundry Company).

*Isadore M. Mackler,* with whom were *Theodore Godlin* and, on the brief, *Gerald Kolinsky,* for the appellee-appellant (named defendant).

MURPHY, J.  On December 28, 1959, the zoning board of Stamford voted unanimously to change the

zone of a thirty-nine-acre tract of land from an RA-1 one-family residence district to a C-D designed commercial district and also authorized the use of the land for a research and experimental laboratory. The plaintiffs appealed to the Court of Common Pleas, which held that the board had not acted illegally, arbitrarily or in abuse of its discretion and dismissed the appeal. Both the plaintiffs and the defendants have appealed from the judgment rendered for the defendants. In the view which we take of the case, it is unnecessary to discuss the defendants' appeal.

The property in question is now owned by the defendant American Machine and Foundry Company, herein called A.M.F. In 1957, a similar change of zone was made by the board on the application of A.M.F. and Hugh D. Catty, who then owned most, if not all, the property. Upon appeal, the action of the board was reversed by us because the change of zone and the use by A.M.F. would create undue traffic congestion and because traffic into the property was routed in violation of the zoning regulations. *Gordon* v. *Zoning Board,* 145 Conn. 597, 603, 145 A.2d 746. That appeal was decided on October 28, 1958.

The application for the change of zone in this case was filed on August 31, 1959. The Stamford zoning regulations, with amendments which became effective on March 5, 1957, provide for the creation of four types of designed districts. Stamford Zoning Regs. §§ 4 (A), 8 (1959). No particular areas on the zoning map were laid out as designed districts. Under § 8 of the regulations, any area of land having a minimum acreage—the minimum in each case being dependent on the type of district to which the area is contiguous—can be converted

into a designed district by the zoning board under the procedure prescribed for other zoning changes. The specific uses which are permitted in the various designed districts are set out in minute detail in the regulations, and other standards, requirements, restrictions and prohibitions are enumerated, so that strict compliance with the regulations is assured. The design, location, height and bulk of buildings, the provision for parking areas, and all uses of property in a designed district also require the approval of the board before a building permit can be issued.

The zoning map shows three areas which have been converted to C-D designed commercial districts. The one nearest to the A.M.F. tract is within 1000 feet of it and extends southerly from the Merritt Parkway for approximately half a mile on both sides of High Ridge Road. The A.M.F. tract is immediately south of the Merritt Parkway and lies east of Turn of River Road, which is the first street east of High Ridge Road. The tract is unimproved, uneven in terrain, irregular in shape and heavily wooded, with a swamp in the southerly part. It is unsuitable for one-family houses on single acres. The highest elevation is at the northeast corner. The grade descends to the west and south with marked variations in level. There are major outcroppings of rock and large boulders. The area nearest the parkway between Turn of River Road and the C-D district on High Ridge Road is undeveloped. The planning board of Stamford on December 18, 1956, designated the A.M.F. tract as a C-D designed commercial district on the master plan. The Stamford charter prevents the zoning board from changing the zoning map to permit, in any area, a use which is contrary to the gen-

eral land use established for that area by the master plan. Stamford Charter § 552; 26 Spec. Laws 1234. The action by the planning board was a necessary prerequisite to favorable action by the zoning board in this case. As the A.M.F. tract was already included in the master plan for the use for which the zone change was sought, nothing in § 8-3a of the General Statutes, effective October 1, 1959, would, even if that statute were applicable, have required the zoning board to refer the A.M.F. application to the planning board. See *Chayt* v. *Maryland Jockey Club,* 179 Md. 390, 394, 18 A.2d 856. The public hearing in this case was assigned for September 30, 1959, a date which antedated the effective date of the statute. It should be noted that under the Stamford charter (§ 552) unfavorable action by the planning board precludes action by the zoning board, whereas disapproval under the statute permits action by the zoning board but requires a vote of not less than two-thirds of all the members of the zoning board to adopt the change.

Twenty-four owners of property in the general neighborhood took the present appeal to the Court of Common Pleas. Only four of them satisfied the court that they were aggrieved by the action of the board and were proper parties to pursue the appeal. Although the defendants challenge this conclusion, there was sufficient evidence, if believed by the trier, to sustain it. It was a question of fact for the court to determine. *Fox* v. *Zoning Board of Appeals,* 146 Conn. 665, 667, 154 A.2d 520.

Subsequent to the action of the zoning board on April 29, 1957, in granting the application in the *Gordon* case, supra, to change the zone, but prior to the determination of the appeal therein, the legislature enacted a special act, effective May 28, 1957,

directing the highway commissioner to improve and widen High Ridge Road south of the Merritt Parkway. 28 Spec. Laws 538. The road, a state-aid highway, had not been widened prior to the favorable action by the board on the present application. In *Gordon,* the inadequacy of the interchange at the parkway—and of the adjacent roads —for handling additional traffic was pointed out. When the board heard the present application, representatives of the highway department testified that the interchanges for both eastbound and westbound traffic on the parkway had been redesigned and were to be relocated, improved and enlarged as the result of traffic studies made in 1955. Contracts for this work as well as a contract for the widening of High Ridge Road to make it four instead of two lanes had been executed, and the work was to be started about November 15, 1959, and finished in July, 1960. These proposed alterations, which would make the traffic pattern entirely different from that which existed in *Gordon,* were included among the reasons given by the board for its approval of the change of zone. Especially in view of the fact that contracts to carry out the proposed alterations had actually been made when the board acted, there is no merit to the contention of the plaintiffs that the board should not have given any consideration to the alterations. They had been completed and were in operation when this case was tried below. At the conclusion of the trial, the court, with counsel, viewed the A.M.F. tract and the area immediately surrounding it. Because of the extensive changes which had been made since the board acted, the plaintiffs objected to the court's consideration of any factors which would be disclosed by the viewing,

unless their consideration was restricted to the question of aggrievement. As the alterations to be made in the roadways and interchanges were included among the reasons given by the board for its action, the court did not abuse its discretion in refusing to restrict the scope of its view of the area as requested. See *Dickson* v. *Yale University,* 141 Conn. 250, 256, 105 A.2d 463.

Basically, the principal objections of the plaintiffs to the change of zone can be compressed into three categories. They claim that there has been no substantial change in conditions in the area since the adoption of the current zoning map in 1951, that the change in zone is not in accordance with the comprehensive plan, and that the change in zone constitutes spot zoning. The evidence on which the plaintiffs rely to substantiate their first contention was not such that it had to be accepted by the board. It is stated on the face of the zoning map included in the return of the board to the trial court that the map was adopted in November, 1951, and included all amendments and revisions as of August 23, 1956. While it is true that the A.M.F. tract is still in the primitive state it was in, in 1951, we do not subscribe to the plaintiffs' view that the board is precluded from taking into consideration changes which have occurred in the general neighborhood, though not in the particular property involved. *Ball* v. *Town Plan & Zoning Commission,* 146 Conn. 397, 400, 151 A.2d 327. Since 1951, the nearby C-D designed commercial district has been created on High Ridge Road, and since the decision in *Gordon,* Turn of River Road has been repaved, so that the traveled portion is widened from fifteen or sixteen feet to twenty-seven feet. In addition, there was the evidence concerning the improvements to be

made in High Ridge Road and the parkway inter-changes.

The powers and duties of the zoning board in Stamford are to be found in the Stamford charter. *Burke* v. *Board of Representatives,* 148 Conn. 33, 35, 166 A.2d 849. Because of the unusual features in that charter, a zone change in Stamford requires the approval not only of the zoning board but of the planning board. Ibid.; Stamford Charter §§ 522-522.2; 26 Spec. Laws 1228, 1229. In a situation such as this, the master plan has to be considered as an integral part of the comprehensive plan of zoning for the city, because the master plan is "based on studies of physical, social, economic and gov-ernmental conditions and trends and . . . designed to promote with the greatest efficiency and economy the coordinated development of the municipality and the general welfare, health and safety of its people." Stamford Charter § 522; 26 Spec. Laws 1228. Where there is no master plan established by a planning commission, the comprehensive plan is to be found in the scheme of the zoning regula-tions themselves. *Couch* v. *Zoning Commission,* 141 Conn. 349, 355, 106 A.2d 173; see *Kiska* v. *Skrensky,* 145 Conn. 28, 32, 138 A.2d 523; *Purtill* v. *Town Plan & Zoning Commission,* 146 Conn. 570, 572, 153 A.2d 441. In Stamford, the comprehensive plan is to be found in the master plan and the zoning regulations. After the regulations making provision for designed districts were adopted in 1951 and amended in 1957, and the planning commission in 1956 amended the master plan to designate the A.M.F. tract as a C-D designed commercial district, it was only necessary for the zoning board to act on the application for the change of zone to have it fit into the compre-hensive plan. And since the change of zone is in

accordance with the comprehensive plan, the claim of spot zoning also vanishes. *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538.

The plan of use of the A.M.F. tract provides for traffic to enter and leave the premises by a road to be built in the northwestern corner of the property, where Turn of River Road, now that the new interchanges have been constructed, reaches a dead end. This plan eliminates Buxton Farm Road as the means of access. Its use for the purpose was held illegal in *Gordon.* In addition, a new connector road twenty-six feet wide now runs east from High Ridge Road to intersect Turn of River Road opposite the intersection of that road and Buxton Farm Road. As the traffic studies showed relatively little traffic through the intersection of Turn of River Road and Buxton Farm Road to and from High Ridge Road, the connector road will be devoted mainly to A.M.F. traffic. This will amount to about 400 cars, which will enter the premises in the morning and leave in the late afternoon. The plaintiffs maintain that traffic like this will produce the congestion which was one of the reasons given for the reversal in *Gordon.* The question is one which has given us much concern. The Merritt Parkway, High Ridge Road and the interchanges are not local roads, designed for the exclusive use of Stamford. They also serve interstate and other intrastate transportation. This factor must be considered when the impact of increased traffic is assessed. The opening of the Connecticut Turnpike has lessened somewhat the use of the Merritt Parkway. The new traffic pattern has eliminated the particular situation which existed in *Gordon.* The prohibition on the parking of cars in the underpass where the parkway goes over High Ridge Road allows addi-

tional traffic through the underpass. This solution does not meet the recommendation of A.M.F.'s own expert in *Gordon* that the underpass itself be widened. Nor does it meet the assertion of the plaintiffs' expert in this case that a fourth leaf in the northeast quadrant of the interchange is essential to the proper movement of traffic through the interchange so as to avoid left turns against oncoming traffic. The solution, although not ideal, does, however, provide relief.

Zoning cannot be static; *Kutcher* v. *Town Planning Commission,* supra, 708; anymore than an arterial highway system can withstand improvement in this automotive age. Undoubtedly, a system of traffic control, whether automatic or manual, will have to be provided on High Ridge Road and, possibly later, on Turn of River Road, in order to blend the increased number of vehicles generated by A.M.F. into the traffic stream without causing undue inconvenience to other lawful users of the highways. It is a problem of which the Stamford traffic authority claims to be cognizant. As it is presumed that public officers will do their duty, it can be assumed that by the time the A.M.F. traffic becomes a reality instead of a possibility the state traffic commission, acting under chapter 249 of the General Statutes, will have established a system of traffic controls to handle the additional traffic. See cases such as *Low* v. *Madison,* 135 Conn. 1, 7, 60 A.2d 774; *Shell Oil Co.* v. *Ricciuti,* 147 Conn. 277, 285, 160 A.2d 257.

In order not to lengthen this opinion unduly, we have avoided setting out in detail the special conditions and standards imposed by the board on A.M.F. in addition to those contained in the regulations. Nor have we included all of the reasons advanced by the board for its action. The memoran-

dum of decision of the trial court and the printed record of the proceedings before the board contain them in detail. Recently, we had occasion to pass on the validity of regulations authorizing special permits pursuant to § 8-2 of the General Statutes, as amended effective October 1, 1959, by No. 614, § 2, of the 1959 Public Acts. *Summ* v. *Zoning Commission,* 150 Conn. 79, 84, 186 A.2d 160. Of course, § 8-2 does not apply to Stamford, because zoning there is governed by charter provisions. The type of use which is authorized under the Ridgefield regulations in the *Summ* case, however, and the conditions and standards governing that use bear a striking resemblance to those with which we are concerned in this case. Reference is made to the *Summ* case to indicate that there is legislative approval of the results to be achieved by designed districts in the municipalities which enact zoning regulations under the provisions of the general law. In the final analysis, zoning is primarily a matter of local concern. The local authorities are conversant with the needs of the community as a whole. They are in the best position to plan the orderly growth and expansion of the community for the general welfare. The courts should not and will not override the local boards unless there is a clear and definite breach of duty. *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454. The trial court has found none here, and we concur in that conclusion.

One other claim of the plaintiffs requires discussion. Roland H. Trudel, a member of the Stamford board of zoning appeals (see Stamford Charter § 560; 25 Spec. Laws 445, 26 id. 257) is the executive vice chairman of the Citizens' Action Council for the Improvement of Stamford. He appeared at the hearing before the zoning board and stated that

as executive vice chairman of the council he had been instructed to read to the board a written statement which he as executive vice chairman had signed and which stated that the executive committee supported the A.M.F. application and urged favorable consideration of it. In appearing before the board in favor of the application, Trudel violated § 8-11 of the General Statutes, which prohibits a member of a zoning board or of a zoning board of appeals from appearing before either board on matters pending before them. A similar statute applies to members of a planning commission. General Statutes § 8-21. The plaintiffs are entitled to have the limited finding corrected to include paragraph six of the draft finding, but since the statute neither makes Trudel's action a crime nor renders the board's reception of his evidence a reason for denying the application, the correction will not benefit the plaintiffs.

There is no error.

In this opinion the other judges concurred.