[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal of a decision of the Zoning Board of the City of Stamford to rezone a section of Stamford known as the "Downtown/Bull's Head" section. The underlying facts of the appeal were summarized by the Connecticut Supreme Court as follows: CT Page 5530
 On March 11, 1985, as part of an extensive rezoning of the city of Stamford, the zoning board, after a public hearing, approved eight applications for zone changes that the board itself had proposed. One of the applications, pertaining to the "Downtown/Bull's Head" neighborhood, included a change of zone for the plaintiff's property at 480 Bedford Street from C-L, a limited business zone allowing certain commercial and residential buildings, to R-H, a high density residential district of varying dwelling unit density, depending upon the size of the lot.
Weinstein v. Zoning Board, 214 Conn. 400, 401 (1990). (This appeal is a remand from that decision).
 The rezoning consisted of eight separate applications brought by the zoning board to itself. Each application covered large sections of the City of Stamford and included areas for which various zone changes were to remain unchanged. Application No. 84-053 [which is the subject of Weinstein's appeal] was the eighth application initiated by the zoning board as part of its comprehensive rezoning plan, proposed to rezone various areas in the Downtown/Bull's Head area. This application affected a large two area of Stamford extending approximately two miles from north to south and approximately one mile from east to west. This application also included a number of zoning districts that were not changed and a number of districts that were changed. In some instances, changed districts on this application were separated from other changed districts by areas of land unaffected by any change. The central business district as shown on this application remained unchanged. In addition, the proposed changes affected such land uses as commercial, single family residential and multifamily residential.
Stamford Ridgeway Associates v. Board of Representatives,214 Conn. 407, 409-10 (Weinstein's case and this case were originally consolidated in the first appeal of the board's decision, which was dismissed as to Weinstein by Judge Gerety for lack of subject matter jurisdiction.)
The board's action was authorized by Stamford Charter sections C6-40-1 and C6-40-3 (previously 550 and 552). Prior to enacting a zoning amendment, the zoning board solicited input from a variety of sources. See ROR #s 1-7, 10-12, and 24). A neighborhood workshop on Application 84-053 was conducted on May 24, 1984. (ROR #2). An information package for this workshop was made available, which included a map of the proposed CT Page 5531 changes, density standards for all zoning districts, and general I descriptions of the areas recommended for change. (ROR #1). The purposes of the workshop were "to stimulate full discussion of comprehensive re-zoning for Stamford's residential, business and industrial neighborhoods" (ROR #1), and to have an informal work session to solicit community reaction to the staff proposals. (ROR #2). The workshop, which lasted approximately one and a half hours, was attended by fourteen people. (ROR #2).
In addition, the zoning board solicited and received commends from several local and state agencies, including the Traffic and Parking Department, the Planning Commission, and the State DEP. (ROR #s 3-7, 10-12, and 24). An executive meeting of the Zoning Board was held on December 10, 1984 at which Application 84-053 was discussed; the subject property was not specifically mentioned. (ROR #32). Written comments on the application were received from several residents of Stamford (ROR #s 23, 15, 16, 19, 20, 21, 22, 26 and 27).
On January 24, 1985, a public hearing was held on Application 84-053. (Supplemental ROR, Transcript of Public Hearing). Legal notice of this hearing was published on January 10 and 18, 1985 in the Stamford Advocate. (ROR #14). The notice contained a map of the proposed changes and a statement that copies of detailed maps were available for public inspection at various locations in Stamford. (ROR #14). In addition, 578 property owners in Stamford received copies of the notice through the mail. (ROR #8). At this hearing the zoning analyst for the city stated, in reference to the area in which plaintiff's property is located, "Rezoning for residential purposes is in accord with the Master Plan and the desire to promote high intensity housing within and near the central business." (Suppl. ROR at p. 9). Also at this hearing plaintiff's attorney spoke on behalf of Mr. Weinstein, raising similar arguments as those raised in this appeal. (Id. at 51-52).
In addition to comments received at the public hearing and by mail, the board had before it a report from the city's zoning analyst. (ROR #9). This report contained the following comments.
 This proposal [Application 84-053] is based, among other things, on studies of the height, bulk and use of existing buildings; lot size; existing and potential traffic generation and the character of the area streets; and the character of the district and its suitability for particular uses. CT Page 5532
(ROR #9, para. 1).
 The proposed zoning is the product of long study and takes into account the need to balance residential and commercial development. The Board feels that the best way to achieve residential construction in and near the central business district is to zone land for residential purposes. The proposed zoning would restrict presently permitted commercial expansion and places more land in residential districts. The map has been reviewed by staff and the Board and adheres to the purposes of zoning as set forth in Section 1A of the regulations. The Board believes that the proposed zoning encourages the most appropriate use of land.
(ROR #9, para. 21).
Subsequent to the public hearing, the zoning board held executive meetings at which Application 84-053 was considered. (ROR #s 34 and 37). Regarding the neighborhoods being rezoned from C-L to R-H, the minutes of the meeting held on February 5, 1985 reflect the "[i]t was the opinion of those present that this was a prime site for residential development within the so-called `collar-area' recommended for housing in the Master Plan." (ROR #34). At the meeting of March 11, 1985, the meeting at which Application 84-053 was approved, the following statement was made by the Zoning Board:
 "The adoption of a revised Zoning Map for the City of Stamford is the culmination of five years of work and study by the Zoning Board and the Planning Zoning staff of the City of Stamford. The task began in 1980 when the Board reviewed critiques of the regulations of all existing zones. During the first three years the Board concentrated on revising the regulations pertaining to multi-family zones and some of the commercial districts. In July 1982 the Board held an open meeting inviting public comment on proposed regulations for all residential districts.
 In 1982 the staff began drafting its proposed Zoning Map. Among the objectives were the elimination of strip commercial zoning, reduction of potential commercial intensity adjacent to low and medium density residential development and the retention of residential uses by zoning for residential purposes land so used but zoned commercial. In September 1983 the Board issued a news release announcing the staff proposed Zoning Map and inviting public inspection and comment. CT Page 5533
 Starting in February 1984 the Board held a series of neighborhood workshops on the proposed maps. Notices were printed in The Advocate encouraging attendance at workshops and the Board distributed information packages to various civic organizations. The Board gathered public comment and after each workshop reviewed the neighborhood maps. The Board itself made changes to the maps and these maps constituted the Zoning Board's proposed rezonings on which public hearing were held beginning in August 1984. All property owners in each of the neighborhoods were personally notified of the public hearing by mail and received a copy of the proposed Zoning Map of their area.
 Comments on all proposed maps were received from the Planning Board, Department of Traffic and Parking and the Environmental Protection Board. The Board considered all comments received and those made at the public hearings. After each hearing the Board reviewed the maps again and made changes it felt appropriate.
 Revision of the Zoning Map was approached and conducted in a comprehensive manner. Great effort was made to obtain public comment and take same into account in formulating the final proposals. All along the Board was guided by the principles of good zoning, practical considerations such as infrastructure capacity and traffic generation, and the general health, safety and welfare of the citizens of Stamford. At several meetings the Board reviewed detailed maps of all the neighborhoods to make sure that all changes conform to the 1984 Master Plan Amendment. The changes enacted promote the most appropriate use of land throughout the City."
(ROR #37).
Notice of the board's decision to approve Application 84-053 was published in the Stamford Advocate on March 15, 1985. (ROR #28). By petition dated March 26, 1985 plaintiff Morris Weinstein took this appeal of the board's decision. The petition was served on the defendant zoning board on March 26, 1985 and filed with the court on April 8, 1985. On November 9, 1988 the trial court, Gerety, J., dismissed the appeal for lack of subject matter jurisdiction Mr. Weinstein appealed that decision to the Appellate Court, after a motion to set aside and reopen the judgment was denied by the trial court on February 17, 1989. Pursuant to 4023 of the rules of practice, the Supreme Court transferred the appeal to itself on October 25, 1989. The Supreme Court reversed the trial court's holding that it lacked subject matter jurisdiction, and remanded the case for CT Page 5534 further proceedings. See Weinstein v. Zoning Board, 214 Conn. 400
(1990). A hearing on this appeal was held in chambers on November 21, 1990.
AGGRIEVEMENT
To maintain an appeal from the decision of the zoning board pursuant to Conn. Gen. Stat. 8-8 the plaintiff must be aggrieved by the board's decision. Primerica v. Planning and Zoning Commission, 211 Conn. 85, 92 (1989). Aggrievement is a question of fact for the trial court to determine on appeal. Id. at 93. A party who owns land that abuts or is within a radius of one hundred feet of any portion of the land involved in the board's decision is statutorily aggrieved. See Conn. Gen. Stat. 8-8(1). The owner of the property affected by the decision is considered to be aggrieved. Bossert Corp. v. Norwalk, 157 Conn. 279, 284 (1968). By affidavit dated November 21, 1990, plaintiff Morris Weinstein has stated that he is the owner of the property located at 480 Bedford Street in Stamford, which property is the subject of this appeal. It is found that plaintiff is aggrieved and authorized to maintain this appeal.
The planning board of Stamford is empowered by the Stamford Charter to "prepare, adopt and amend" a master plan for he city. Stamford Ridgeway Associates v. Board of Representatives, 214 Conn. 407, 420 (1990) (quoting Stamford Charter C-520, C-522.1 and C-522.2). The Charter also empowers the zoning board, after the effective date of the aster plan, to amend the zoning map, provided that any amendment is not contrary to the general land use established for that area by the master plan. Id. at 420 (citing Stamford Charter Section C-522).
STANDARD AND SCOPE OF REVIEW
Because this case involves a decision of the board on application for a change of zone, the trial court is required to review a decision by the board acting in its legislative capacity. Burnham v. Planning and Zoning Commission, 189 Conn. 261,265 (1983). In such a case the court's function is not to retry the case. Id. The court cannot substitute its judgment for the wide and liberal discretion vested in the local zoning board when it acts within its prescribed legislative powers. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,571-72 (1988); see Burnham, 189 Conn. at 266. The decision of the board will only be disturbed if it is shown to be arbitrary, illegal or an abuse of discretion. Frito-Lay, Inc.,206 Conn. at 573. see Stiles v. Town Council, 159 Conn. 212,219 (1970). Conclusions reached by the zoning authority must be upheld if they are reasonably supported by the record. CT Page 5535 Primerica v. Planning and Zoning Commission, 211 Conn. 85, 96
(1989). The plaintiff has the burden of proving that the zoning board acted improperly. Blaker v. Planning and Zoning Commission, 212 Conn. 471, 478 (1989); see Morningside Association v. Planning and Zoning Board, 162 Conn. 154, 157
(1972). "`The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution.'" First Hartford Realty, Corp. v. Plan and Zoning Commission,165 Conn. 533, 540 (1973) quoting Cameo Park Homes, Inc. v. Planning Zoning Commission, 150 Conn. 672, 677 (1963).
ZONE CHANGES
To be valid, a zone change must pass a two-part test, to wit, it must: (1) be in accord with a comprehensive plan and (2) be reasonably related to the normal police power purposes enumerated in Conn. Gen. Stat. 8-2. First Hartford Realty Corp. v. Plan Zoning Commission, 165 Conn. 533, 541 (1973). "`A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties.'" First Hartford Realty Corp., 165 Conn. at 541, quoting Summ v. Zoning Commission, 150 Conn. 79 (1962). If the board acts with the intention of promoting the best interests of the whole community, the requirement of a comprehensive plan is generally satisfied. Id. In addition, in Stamford, 550 of the Charter (C6-40-i in the current codification) provides that the:
 Board may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings or structures throughout each district, but the regulations in one district may differ from those in another district, shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public CT Page 5536 requirements. Such regulation shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality.
Planning and Zoning in Stamford is governed by Special Act rather than by the General Statutes. See Sheridan v. Planning Board, 159 Conn. 1, 5 (1969); Luery v. Zoning Board, 150 Conn. 136,143 (1962); see 26 Spec. Laws 1228 (1953) (The Stamford Charter); see also Karp v. Zoning Board, 156 Conn. 287, 290-91
(1968). The comprehensive plan in Stamford is found in the master plan and the zoning regulations. Id. at 294.
The Zoning Board is authorized by C6-40-3 of the Stamford Charter (formerly 552) to amend the city's Zoning Map. This section provides that "prior to any such action, the Board shall hold at least one public hearing therein, notice of which shall be given as hereinafter provided. If said Board is the proponent of any such change, said notice shall contain the Board's reasons for the proposed change. The Zoning Map shall not be amended by said general land use established for such area by the Master Plan."
The plaintiff argues that the amendment to the zoning regulations did not conform to the requirements of 550 of the Stamford Charter because the board disregarded those requirements and: "[created] a district devoid of uniformity as to buildings and structures throughout this R-H district." (Plaintiff's Memorandum, October 20, 1987, at p. 11). Plaintiff further argues that:
 [b]y placing plaintiff's property and the property to the north and east into the R-H zone, the board has violated the requirement of uniformity for the regulations of the buildings and structures throughout the district under [Section C6-40-1] . . . .As a result, the board has created a dichotomy of regulatory standards and requirements as to buildings and structures within the same district in violation of the Charter.
(Id. at p. 12). He contends that the board's failure to follow the requirements of this section was illegal, arbitrary and an abuse of discretion. (Id. at p. 13). As support for this contention plaintiff states:
 The board gave no reasonable consideration to the character of the very district in which plaintiff's CT Page 5537 property is located, to the multitude of high rise office and residential buildings located in the district, to the intensity of development of those buildings, and to the area of land covered by them. Nor did it give such consideration to the district's suitability to particular uses, or to the question of conserving the value of buildings as required by Section 550. Nothing in the record shows that it gave consideration to any of these requirements when it limited the property to residential use. Cloaking its action under the statement that the proposed zoning encourages the most appropriate use of the land does not meet the other requirements of Section 550.
Id. at 14. He claims that there is no evidence in the record to support the conclusions reached by the Board regarding the need for housing, and no facts and figures which could be rebutted by opponents to the amendment.
Plaintiff next argues that the record does not reasonably support the change of zone of plaintiff's property. He claims that record items 2-9, 13-14, 15-22 and 24-29 were not presented at the public hearing and therefore do not belong in the record. He contends that only the transcript of the hearing, the post-hearing board meetings' minutes, and the final decision are properly in the record. He argues that no facts or data exist in the record to support the rezoning of his property. Further, he states:
 The references to neighborhood workshops, to prior meetings and to staff studies, etc. in the minutes of the March 11, 1985 executive session of the board should not be considered since no evidential or factual material derived therefrom was presented at the public hearing. Until notice is given of a public hearing with respect to proposed changes and until a public hearing is held thereon, any prior preliminary matters which occurred outside the public hearing cannot be considered part of the evidence before the zoning board because neither the public attending the public meeting nor this court can ascertain what facts and studies were considered and used by the board in arriving at its decision.
(Plaintiff's Post-trial Memorandum, February 5, 1988, at p. 2-3). Finally, plaintiff argues that "[t]he failure to present such material at the public hearing and to introduce it as evidence into the record, precludes the use of reference to such meetings as the factual basis for its decision." (Id. at p. 3). CT Page 5538
Plaintiff's third argument is that the Board's decision was predetermined. He states his argument in part, as follows:
 The report contains no factual data but is only generalized conclusions. Since no evidence was presented by the board to support-its proposals and since the record does not support the reasons given for the changes made or support the changes themselves and since the board paid no attention to all the speakers who spoke in opposition to the proposals (none were in favor except those who favored the change in the Methodist Church property at Bull's Head), it is quite apparent that the board had made up its mind in advance of the hearing.
(Plaintiff's Memorandum, October 20, 1987, at p. 23). He further contends that since no changes were made to the proposal of the Board as a result of the public hearing, "[t]he only possible conclusion is that the board had made its decision in advance and was going to adopt its proposals regardless of public feeling or public opposition." (Id. at 24). In his Post-Trial Memorandum plaintiff assets that "the claim of predetermination is based on the fact that the record is devoid of facts or studies which support the changes. . . ." (Plaintiff's Post-Trial Memorandum, February 5, 1988, at p. 9). Plaintiff also contends that the board's goal of increasing residential development is not met by changing his property from C-L to R-H, in that he can build fewer units now than if his property had remained in a C-L zone due to the density requirements.
ARGUMENTS OF THE PARTIES — DEFENDANT
Defendant argues that the reasons stated by the Commission for the rezoning of plaintiff's neighborhood are supported by the record. In support of the argument, defendant cites to documentary evidence in the record, e.g. comments from the Planning Board, the Traffic and Parking Department, the State DEP, and the neighborhood groups. Defendant argues that:
 There is amply evidence in the record of traffic problems, as documented by the Department of Traffic and Parking, traffic counts and testimony of neighbors; that intense office development belongs in the Central Business District, not along Bedford Street; that there is a desperate need for housing, not more office space; and that the 1984 Master Plan was changed to reflect the fact that further intense commercial growth cannot be supported by the overburdened "infrastructure" of the City of Stamford. CT Page 5539
(Supplemental Brief of Defendant, November 7, 1990, at p. 12).
Defendant also argues that the minutes of the Zoning Board meeting of March 11, 1985 indicate that plaintiff's property was considered, and although no changes were made to the proposal which affected his property, changes were made to other properties, and therefore plaintiff's claim of predetermination is without merit.
Further, defendant contends that the goal of restructing commercial development and providing needed housing in plaintiff's neighborhood, are met by zoning such neighborhood R-H, and the record supports the decision to so zone it, to wit, evidence of consideration of traffic congestion, the Master Plan premise of limiting intense commercial development to the Central Business District, the board's reliance on its own knowledge of the area, and the input from the public.
 While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise.
Rodgers v. Tarrytown, 302 N.Y. 115, 96 N.E.2d 731 (1951).
It is the opinion of the court that the plaintiff has failed to prove that the zone change is invalid. He has not demonstrated that the change was not in accord with the comprehensive plan or unrelated to the considerations of the character of the district, a view to conserving the value of buildings, or encouraging the most appropriate use of land throughout the municipality, as 550 requires. It is found that plaintiff's property's location on the dividing line between the central business district and the R-H zone is the source of his disagreement with the board's decision.
The record indicates that the board's decision came after a long and careful consideration of the needs of Stamford and how best to address them, including consideration of the need for housing. Although plaintiff argues that he is allowed fewer housing units in the new zone, he is missing the point. In the C-L zone, plaintiff could have used his property for housing, but was not required to. In the R-H zone, plaintiff's property must be used for housing. It is found that the change of zone to R-H was neither arbitrary, illegal nor an abuse of discretion. The record shows that zone changes were made in the CT Page 5540 Downtown/Bull's Head neighborhood to limit commercial development and promote residential development, as a means of addressing the present and future needs of the city. The goals have been previously approved, see, e.g. First Hartford Realty Corp. v. PZC, 165 Conn. 533 (1973), and may provide support for the board's decision here.
In addition, plaintiff's argument that only evidence presented at the hearing could properly be considered by the board is without merit. The board members were allowed to rely on any knowledge they acquired by personal observation. See Central Bank for Savings v. PZC, 13 Conn. App. 448, 454 (1988); see also, Feinson v. Conservation Commission, 180 Conn. 421
(1980). The minutes of the executive meetings of the board (ROR #32, 34 and 37) demonstrate that due consideration was given to the requirements of section 550 of the charter. Additionally, because the board made changes to the original proposal after comments were received from the public, it is found that plaintiff's predetermination argument is without merit. Accordingly, because the record supports the decision approving Application 84-053, the appeal is dismissed.
JOHN J. P. RYAN, JUDGE. CT Page 5541
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5542
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5543
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5544
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5545
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 5546