[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
At its meeting of November 6, 1989, the Mansfield Planning Zoning Commission (hereinafter referred to as the "Commission") received an application from Mansfield Development Associates Ltd. Partnership (hereinafter referred to as the "Partnership") seeking a special permit to construct a mixed use project in a Neighborhood Business Zone consisting of 65 residential units and approximately 18,790 square feet of professional office space in buildings of 5,000 square feet or less to be known as "The Farms" (Record #1 and #4).
The site selected for the project is located on a 25.23 acre parcel of land situated on the easterly side of Connecticut Route 195 between Cemetery Road on the north and Bassetts Bridge Road on the south.
The application of the partnership for a special permit was filed with the Commission pursuant to the provisions of Article VII M of the Zoning Regulations wherein the uses permitted in the Neighborhood Business Zone are set forth. All uses of land in the Neighborhood Business Zone are subject to the acquisition of a special permit from the Commission (Record #151, page 74).
On January 23, 1990, the Commission held a public hearing on the application of the partnership. Notice of the public hearing was published in The Chronicle on January 9, 1990 and January 17, 1990 (Record #2).
The hearing on the application of the partnership continued on the evenings of January 24, 1990, January 30, 1990, February 6, 1990, February 22, 1990, March 5, 1990 and was concluded on March 19, 1990. Verbatim transcripts of all these hearings have been returned to court as Record #159 through #165 consisting of in excess of 700 pages.
At its meeting of June 4, 1990, the Commission voted to deny the application of the partnership (Record #4). CT Page 4112
Notice of the decision of the Commission was published in The Chronicle on June 16, 1990 (Record #3).
The Partnership appealed the decision of the Commission to this Court on June 25, 1990.
Before the Court is able to entertain the merits of the plaintiff's case, the issue of aggrievement, which is a pre-requisite to the Court's exercise of jurisdiction in this or in any other administrative appeal, must be met and satisfied. Walls v. Planning Zoning Commission, 176 Conn. 475
479; Fletcher vs. Planning Zoning Commission158 Conn. 497, 501. In situations where appellants are not statutorily aggrieved, they must, of necessity, establish classical aggrievement. Our courts have declared a two-fold test to establish classical aggrievement:
"First, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific, personal and legal interest has been specially and injuriously affected by the decision." Walls v. Planning Zoning Commission, 176 Conn. 475, 477-478.
On appeal, the appellant must establish his aggrievement and the court must decide whether he has sustained the burden of proving that fact. I. R. Stich Associates, Inc. v. Town Council, 155 Conn. 1, 3.
The Court finds based on the evidence presented that the plaintiff has sustained the burden of proof on that issue and hence the Court finds the plaintiff to be an aggrieved party within the meaning of the applicable statutes and case law.
The authority of a local Planning Zoning Commission to permit certain uses by special exception is specifically authorized by that portion of Section 8-2 of the General Statutes which provides, in part, as follows:
 All regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations CT Page 4113 in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures of use of land are permitted only after obtaining a special permit or a special exception from a. . .Planning Zoning Commission. . .subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values.
The Neighborhood Business Zone is one of several Design Development Districts permitted in the Town of Mansfield (Article X.a.1.c, page 99, of the Zoning Regulations). In this regard, Article X.A.1 provides, in part, as follows:
 The Design Development classifications and associated regulations are intended to encourage, under strict yet flexible control, the coordinated development of specialized and more intensive uses and groups of principal buildings and uses. Through the use of the Design Development District Regulations, large tracts of land and groupings of adjacent lots can be efficiently developed as a single, comprehensively planned unit. Mixed use project and set back variations or waivers are examples of specialized provisions that may be authorized in some of the specific Design Development zones.
Article X A.2 provides, in part, as follows:
 Article VII of these regulations delineates the primary uses which may be authorized within the various established Design Development Districts and specifies the type of approval which shall be obtained.
Article VII. M. of the Zoning Regulations, page 74, lists the uses permitted in the Neighborhood Business Zone. Six specific categories of uses, designated A through F, are listed as permitted uses of land subject to the acquisition of a special permit from the Commission.
Applicants for a special permit must be able to demonstrate compliance with all of the specific standards set CT Page 4114 forth in Article VIII, pages 86-94, of the Zoning Regulations and all of the general standards set forth in Article V, page 29, of the Zoning Regulations. The general standards or criteria set forth in Article V at page 29 of the Zoning Regulations are as follows:
 In all special permit applications, the burden rests with the applicant to demonstrate to the Commission that the subject proposal will not detrimentally affect the public's health, welfare and safety and that the following approval criteria have been met:
 a. That all of the approval criteria cited in Article V, Section A.5 (Site Plan Approval Criteria) of these regulations have been met;
 b. That the proposed use is compatible with the town's Plan of Development and Article I of these regulations (Intent and Purpose).
 c. That the location and size of the proposed use and the nature and intensity of the use in relation to the size of the lot will be in harmony with the orderly development of the town and compatible with other existing uses;
 d. That proper consideration has been given to the aesthetic quality of the proposal, including architectural design, landscaping and proper use of the sites natural features. The kind, size, location and height of structures, and the nature and extent of site work, and the nature and intensity of the use, shall not hinder or discourage the use of neighboring properties or diminish the value thereof.
The terms "Special Permit" and Special Exception", as used in Section 8-2 of the General Statutes have the same meaning and are used interchangeably. Summ v. Zoning Commission, 150 Conn. 79.
"A Special Exception allows a property owner to use his property in a manner expressly permitted by the local regulations. The proposed use, however, must satisfy CT Page 4115 standards set forth in the regulations themselves as well as conditions necessary to protect the public health, safety, convenience and property values. General Statutes Section8-2. Acting in this administrative capacity, the Board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied." Housatonic Terminal Corp v. The Milford Planning Zoning Commission, 168 Conn. 304, 307.
"The courts have permitted lay members of Commissions to rely on their personal knowledge, concerning matters readily within their competence, such as traffic congestion, street safety and local property values." Feinson v. Town of Newtown, 180 Conn. 421, 427.
The Zoning Regulations of the Town of Mansfield are written in the traditional fashion of listing all permitted uses of land. Any use not listed as a permitted use is automatically prohibited. Gada v. Zoning Board of Appeals,151 Conn. 46, 48; Bradley v. Zoning Board of Appeals,165 Conn. 389, 394.
Many of the uses permitted in the regulations are uses permitted as a matter of right i.e. the use is permitted without further action by the Commission if the applicant is able to demonstrate to the Zoning Enforcement Officer that the proposed use complies with all of the specific standards set forth in the regulations. The specific standards deal, for the most part with lot size, lot frontage, minimum set backs from front, side and rear lot lines, height of structures, per centage of lot coverage and parking (Article VII of the Zoning Regulations, Record #151).
Other uses, which possess special characteristics, are permitted in various zoning districts only after review by the Commission on a case by case basis to determine if the general standards specified for such uses can be met. The use which the Partnership seeks in this case is such a use.
In permitting the establishment of certain uses only upon the acquisition of a special permit, the Commission clearly set forth its intent in Article V B-1, page 26, of the regulations as follows: CT Page 4116
 It is recognized that there are certain uses that would only be appropriate in town if controlled as to area, location, or relation to the neighborhood so as to promote the public health, safety and general welfare. As provided for elsewhere in these regulations, such uses shall be treated as special permit uses and provided procedures, standards and conditions set forth or referenced herein are complied with, these uses may be permitted in their respective zoning districts. All such uses are considered to have special characteristics and accordingly each application must be carefully reviewed on a case by case basis.
The Court has stated on several occasions that a Commission acts in an administrative capacity in its review of an application seeking a Special Permit use. That does not mean the Special Permit review process is one without the exercise of discretion on the part of the Commission to determine if the general standards set forth in the regulations have been satisfied.
A Commission engaged in processing an application for site plan review is engaged strictly in a ministerial process much like a Planning Commission in its review of a subdivision application. Allied Plywood v. Planning Zoning Commission, 2 Conn. App. 506, 512. In each of these instances the review process may be accomplished without the need of a public hearing and in each instance the statute (Section 8-3g and Section 8-26) provide specifically for automatic approval if the Commission fails to act within the times prescribed by the General Statutes.
The same situation does not prevail with respect to the Special Permit process. A public hearing is mandated by statute with respect to each application (Section 8-3c). If the Special Permit process were purely ministerial there would be no need to conduct a public hearing. The Special Permit application could be processed like an application seeking site plan approval i.e. it could be done by the Zoning Enforcement Officer, Town Planner or Town Engineer as provided for by Section 8-3g of the General Statutes.
So there is some discretion to be exercised by the CT Page 4117 Commission in processing an application for a Special Permit. The Commission must determine, on a case by case basis, whether the site chosen by an applicant for a Special Permit use is appropriately applying the criteria i.e. standards set forth in the regulations.
In its decision the Commission found that the application of the Partnership failed to comply with various sections of its regulations and denied the application. In doing so the letter of denial of June 14, 1990 states, "The applicant has failed to meet the burden of proof for the following reasons:
 1) The proposal is not compatible with the neighborhood and Mansfield Center area. Many of the buildings, several of which are only 30 feet apart, do not fit in with existing buildings which are more than 30 feet apart. (Testimony)
 2) The proposed density of the development does not adequately protect the integrity of the major aquifer in the Mansfield Center area. The Willimantic Water Works (2/13/90 letter) has indicated they "would prefer to have a lower density of development" within the watershed of the Willimantic Reservoir.
 3) The buildings are too large for the historic nature of the area. The average size of a 19th century house is 40 feet in length. Along Rt. 195, the most visible public area, Building B-1 is 100 feet by 40 feet and Building C-1 is 80 feet by 60 feet. (Forman testimony)
 4) The historic significance of the area is threatened by the size of the proposal. (R. Smith testimony)
 5) The proposal will impact the visual aesthetics of the area and thus adversely affect the character of the location between two historic districts. (Conservation Commission communication)
 6) The applicant failed to meet the burden of proof that there will be a benefit to the general CT Page 4118 welfare of the public. No fiscal impact information was presented to support the economic benefits to the Town. (Testimony)
 7) Due to the complexity of the project as proposed, the PZC is not convinced that enforcement can be expeditiously carried out, and, therefore, the PZC is concerned that environmental damage may occur. Uncertain future public costs can result from this if public water and/or sewers must be extended to the site.
 8) The applicant did not suitably address the potential negative impact on ground water quality. Testimony by SEA related to the cumulative effect of many septic systems over a major aquifer showed errors in the applicant's calculations and also pointed out serious concerns with a project of this size and scope located over a stratified drift aquifer. Small variations in calculations could lead to unacceptable changes in other calculations and unexpected future public costs. The Dep't. of Environmental Protection, in its preliminary review, did not have this information.
 9) The Commission cannot find that the location and size of the proposed use and the intensity of the use in relation to the size of the lot will be in harmony with the orderly development of the Town or compatible with existing uses as proposed. Further, while the PZC is not opposed to some development on this site, this particular proposal, while having some good things about it, is still not in the general welfare of the Town, nor compatible with the existing nearby areas. (Testimony)
 10) The proposal does not provide a 50-foot landscaped buffer as required by Article VI, Section B4.q.2.
 11) The size and scale are not considered to be compatible with the Plan of Development.
A careful review of plaintiffs-appellant's brief CT Page 4119 indicates that counsel has done a superior job of presenting a sympathic case for his clients. He outlines in great detail the background and history detailing the first application, the change in the regulations which occurred between the first application and the second, and then the second application which resulted in a denial of the application by a 5-4 vote of the Commission. The essence of his argument is that:
 The applicants meet every new objective criterion for density, for land coverage, for protection of aquifers, for protection of historic features and for control of traffic and that therefore the application must be approved.
In arguing his case he then claims that since he has met all of the objective criterion, all the reasons for denial are "subjective" and hence cannot be valid considerations in arriving at the conclusion reached. In short, he would like the Court to ignore the fact that in acting upon this application that the PZC has some discretion to exercise in reaching the decision on the application before it.
In order to further his argument that all he needs to establish in order to win is that he has met all objective standards, he would have the Court adopt a rule that once the applicant has established through compliance with objective standards that the proposed use is one permitted within the district there should be a presumption that the use does not adversely affect the district. He goes on to suggest that the presumption may be overcome but only by substantial, objective evidence that the proposed use, 1) differs uniquely from the similar uses contemplated by the special permit regulation, and 2) will have a greater impact on the district than would be expected for similar uses because of its unique characteristics.
Clearly, the case law cited for this proposition does not support the adoption of such a rule and the Court concludes that there is no such presumption existing in Connecticut law. If there is to be such a presumption, the Court believes it should be created by one of our Appellate Courts who can clearly and articularly set forth the rule with its usual clarity, so that trial judges will have the guidance they need for application of such a presumption. CT Page 4120
A review of the record indicating particularly those portions of the record set specifically forth in defendant's brief, pages 14 through 29, would, in order for the Court to find for the plaintiff, require the Court to substitute its judgment for that of the Commission.
In passing on a Special Exception the authority is acting in its administrative capacity determining if the proposal satisfies the conditions in the regulations permitting the exception; Farina v. Zoning Board of Appeals,157 Conn. 420, 422; and the "conditions necessary to protect the public health, safety, convenience and property values," Section 8-2 General Statutes. Essentially, the Board must decide whether the standards in the regulation and the statutes are satisfied. A. P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182, 185.
The Court's inquiry focuses on whether the Board's reasons are reasonably supported by the record and were pertinent considerations the Board was required to apply. Housatonic Terminal Corp. v. Planning Zoning Board,168 Conn. 304, 305-7. In this regard it is axiomatic that the Court will not substitute its judgment for that of the zoning authority; Zieky v. Town Plan Zoning Commission, 151 Conn. 265,267; Housatonic Terminal Corp. v. Planning Zoning Board, Supra; and will not override the authority unless there is a clear and definite breach of duty. Luery v. Zoning Board, 150 Conn. 136, 146; See also Goldberg v. Zoning Commission, 173 Conn. 23, 25-7. Because local authorities are close to the local circumstances and conditions, the zoning agency is given a wide discretion in determining the public need and the means of meeting it; Lurie v. Planning Zoning Commission, 160 Conn. 295, 312; Zieky v. Town Plan Zoning Commission, Supra. Where there is a conflict in testimony before the agency, the Court will not substitute its opinion for that of the fact-finder. Howath v. Zoning Board of Appeals, 163 Conn. 609. Moreover, the decision must be sustained if even one of the reasons given by the agency is sufficient to support its decision. Goldberg v. Zoning Commission, Supra, 26.
The purpose of Special Permits is set forth in Article V B.1 of the Zoning Regulations as follows: CT Page 4121
 It is recognized that there are certain uses that would only be appropriate in town if controlled as to area, location, or relation to the neighborhood so as to promote the public health, safety and general welfare. As provided for elsewhere in these regulations, such uses shall be treated as Special Permit Uses and provided procedures, standards and conditions set forth or references therein are complied with, these uses may be permitted in their respective zoning districts. All such uses are considered to have special characteristics and accordingly each application must be carefully reviewed on a case by case basis.
If the Commission were required to grant every Special Exception Use authorized in the Zoning Regulations because the applicant was able to demonstrate that he was in a position to comply with all of the bulk standards in the regulations such as lot area, set backs, density, height, parking, etc. then, in that event, these uses could be allowed as a matter of right without review by the Commission. The whole purpose of a Special Exception Use is to determine on a case by case basis whether or not a proposed use of land is appropriate in a given location even if it does in fact meet all of the so-called mechanical or specific standards of the regulations. In this particular case the Commission has determined on the basis of the evidence submitted to it at the public hearing and on the basis of its own personal knowledge of the area in question that (1) the intrusion of a commercial/multi-family complex consisting of 65 residential condominium units (48 2-bedroom and 17 one-bedroom), 18,790 square feet of office space, a community with outdoor pool and related site work on a 25 acre tract of land (21.85 acres exclusive of wetlands) situated east of Route 195, north of Bassetts Bridge Road, and south of Cemetery Road in a Neighborhood Business Zone is not compatible with the neighborhood and the Mansfield Center area; (2) the buildings are too large for the historic nature of the area; (3) the historic significance of the area is threatened by the size of the proposal; (4) the proposal will impact the visual aesthetics of the area and thus adversely affect the character of the location between two historic districts; (5) the Commission cannot find that the location and size of the proposed use and the intensity of the use in CT Page 4122 relation to the size of the lot will be in harmony with the orderly development of the town or compatible with existing uses as proposed and further, while the Planning Zoning Commission is not opposed to some development on this site, this particular proposal, while having some good points about it, is still not in the general welfare of the town, nor compatible with the existing nearby areas.
The plaintiffs-appellants' appeal is disallowed and the Commission's decision is affirmed. compatible with the existing nearby areas.
The plaintiffs-appellants' appeal is disallowed and the Commission's decision is affirmed.
BY THE COURT, William M. Shaughnessy Judge, Superior Court