DOROTHY S. KLOTER *v.* ZONING COMMISSION OF THE VERNON FIRE DISTRICT ET AL.

COURT OF COMMON PLEAS    TOLLAND COUNTY    FILE No. 3290

Memorandum filed January 20, 1967

*Pigeon & Gnutti,* of Rockville, for the plaintiff.

*King & Caldwell,* of Rockville, for the named defendant.

*LaBelle, Rothenberg & Woodhouse,* of Manchester, for defendants Kunzli, Pue and Semel.

GRILLO, J. This appeal results from the action of the defendant commission in granting the defendants Kunzli, Pue and Semel a change of zone from residential (R-40) and rural residential (RR-27) to a CB (commercial) zoning classification relative to four parcels of land totaling thirty acres abutting Wilbur Cross Parkway, Reservoir Road and Mile Hill Road in the town of Vernon. The plaintiff's residence, valued at $50,000, is in close proximity to the area involved in the zone change, and part of her land (three and a fourth acres) was also rezoned as a result of the action of the commission. Thus, part of her land is residential and a portion now is classified as commercial. That she is

aggrieved by the action of the commission is undisputed.

A determination of the validity of the commission's decision to rezone the area requires a consideration of certain activities, chronologically considered, on the part of the individual defendants and the defendant commission. The individual defendants, on December 19, 1963, had obtained an option to purchase the area (thirty acres) herein involved. On March 31, 1964, with a view toward promoting their plans to secure a change of zone at a future public hearing following an application therefor, the defendants Kunzli and Pue attended a duly called meeting of the commission at the home of Lombardi, its secretary. Three other commissioners (five comprise the board), Strong, Brown (the chairman), and Huelsmann, also were present. Kunzli and Pue gave the commission detailed information as to their proposals for the area. This meeting, complete with agenda and minutes, lasted about an hour. The potential petitioners, the minutes recite, presented "a letter and plans asking that any zone change be made to conform with their plans for the land." No public notice was given regarding this meeting. On June 12, 1964, Kunzli, Pue and Semel exercised their option and took title to the thirty acres.

In July, 1964 (the exact day of the month is not clear), a hearing was held on the application of the individual defendants for a business classification for a substantial portion of the thirty acres. Represented by counsel, the plaintiff requested that the commission members present at the nonpublic meeting of March 31, 1964, disqualify themselves on the ground that the plaintiff, unaware of the meeting, had no opportunity to examine the petitioners. The commission members refused so to do. The

petition was denied "without prejudice" because of a lack of specific data from the state highway department concerning future road patterns and ramps at the interchange at the location of the area.

Thereafter, on February 1, 1965, the individual defendants submitted another petition for a change of zone, and upon the advice of the commission chairman the application was resubmitted for a CB zone status. This zone permits motels and restaurants. This application encompassed the area that was the subject of the application previously denied without prejudice and an additional parcel, both totaling thirty acres of land. The chairman, on February 18, 1965, wrote the state highway commissioner that "last year he made a similar request and because of our lack of knowledge concerning the proposed highway interchange we denied the request to change zone . . . . Are your proposed maps firmed up enough for them to now be taken as a good guide in this area?" The commissioner responded, in effect, that further study and a more detailed analysis would have to be made relative to traffic operations before that department could state that the situation was "firmed up enough" to be used as a good guide relative to property requirements. The highway commissioner also stated that moneys had to become available for the project and every alternate consideration for the subject interchange had to be exhausted before a determination could be made as to when and what property could be acquired.

As a result of correspondence from the chairman of the commission, letters were received by the commission from the capitol region planning agency and the planning commission of the Vernon fire district looking favorably upon the proposed zone change. This was also the tenor of the opinion of

Technical Planning Associates in a letter to the commission which was obviously based on the premise that substantial changes were planned for expansion of the expressway (route 15) and relocation of Mile Hill Road.

The hearing resulting in the action forming the basis of this appeal was held on March 30, 1965. The zone change became effective May 21, 1965, by public notice. The life of the commission expired June 30, 1965, because of the consolidation of the Vernon and Rockville municipalities. The motion for the change of zone, unanimously approved, was made by Commissioner Welles (Commissioners Strong, Lombardi and Brown were also present) at a meeting on April 28, 1965.

The most notable feature of the March 30, 1965, hearing was the lack of testimony by the petitioners, the individual defendants, one of whom was present with his attorney. There was no testimony of the petitioners' planned operations at the site, no testimony relative to changed conditions since the previous denial, without prejudice, no testimony relative to factors generally considered at hearings to change zones—considerations pertaining to public health, safety, convenience and property values. General Statutes §§ 8-2, 8-3; *Summ* v. *Zoning Commission,* 150 Conn. 79, 91. Neither the minutes of the March 31, 1964, meeting at the Lombardi home nor the record of the July, 1964, hearing was introduced into evidence, although the plaintiff requested that the latter record be made part of the proceedings. The silence on the part of the petitioners was deafening. The sum and substance of the evidence presented in support of the application at the hearing, not by the petitioners, incidentally, but by the chairman of the commission, were the communications from the agencies above referred to. Indeed,

the petitioners' attorney requested the commission to act on the basis of these letters. The chairman's remark, "Why Mr. Kunzli wants to do this [i.e. change the zone] only he can tell you" brought no response from Kunzli, and his attorney, too, balked at offering any verbal explanation of the proposed plan of operations. It is no wonder that Kunzli's silence prompted an opponent to protest that the burden of proof seemed to be placed on the opposition, that the zone change seemed to be a "foregone conclusion."

The conclusion is inescapable that the information obtained by the commission at the ex parte meeting of March 31, 1964, and the public hearing of July, 1964, was taken into consideration by the commissioners in arriving at their conclusions following the March 30, 1965, public hearing and that, in effect the latter hearing was merely a continuation of the previous public hearing after a recess of several months. Indeed, one commissioner at the court hearing readily conceded that the 1964 sessions played a part in his determination of the instant matter. The impropriety in this procedure is that the information unfolded and revealed at those sessions was not exposed to public perusal and potential criticism at the March 30, 1965, public hearing and furthermore this data, amassed by the commission, should have been placed on the record to afford the opponents of the zone change an opportunity to ascertain whether the subordinate facts justified the commission's conclusions, which conclusions will be examined hereinafter.

It is true that the commission could act on its own knowledge, properly acquired. *Mrowka* v. *Board of Zoning Appeals,* 134 Conn. 149, 154. It is likewise undisputed that a commission is entitled to consult with its professional and technical assistants, and so, too, is it that consultations with petitioners and

their representatives may be necessary and even salutary at times. *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 420, 421; *Pecora* v. *Zoning Commission,* 145 Conn. 435, 446, 447. Interested parties, however, must be fairly apprised of the facts upon which the commission is asked to act and thus be provided with an opportunity for cross-examination. *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 293; *Yurdin* v. *Town Plan & Zoning Commission,* supra; *Pecora* v. *Zoning Commission,* supra. Kunzli's explanation in court that his failure to testify at the zoning hearing was due to his already having supplied the commission "detailed" information at the Lombardi home meeting points up the necessity of this legal requirement. Thus, one is left to surmise as to what conditions or factors other than the letters the commission considered in reaching its conclusions. *Dubiel* v. *Zoning Board of Appeals,* 147 Conn. 517, 522.

The cardinal purpose of a public hearing has been clearly enunciated by our highest court: "The purpose of the requirement of a public hearing is obvious. The alteration of zonal boundaries may seriously affect the property rights of those owning land within or near the area involved. Hearings play an essential role in the scheme of zoning and in its development. 1 Yokley, Zoning Law & Practice (2d Ed.), p. 267. They furnish a method of showing to the commission the real effect of the proposed change upon the social and economic life of the community. Id., p. 268. Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor." *Couch* v. *Zoning Commission,* 141 Conn. 349, 356, 357. We hold that the public hearing of March 30, 1965, viewed in the light of the antecedent events chronologically considered above, was

woefully lacking in fulfilling this purpose and violated the "fundamentals of natural justice." *Conley* v. *Board of Education,* 143 Conn. 488, 495.

This case furnishes an apt illustration of the reason why our courts have discountenanced the practice of denying applications "without prejudice." *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 176; *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 705.

Another procedural facet of this matter requires consideration. Commissioner Welles at the time of the events herein described was the owner of several business interests in the Vernon locality. For eight years Pue, his personal accountant, has been his professional adviser in tax matters relative to these interests. The nature of this relationship is so confidential that he felt he could not discuss it at the trial. When Welles himself has had occasion to become interested in real estate options, he has sought Pue's advice from a tax standpoint. Zoning commission members, even though not guilty of an improper exercise of influence, should so conduct themselves as not to create a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will exist in the exercise of zoning power. *Josephson* v. *Planning Board,* 151 Conn. 489, 494. The plaintiff, ignorant of this relationship at the time of the hearing, did not waive her right to claim the disqualification on this appeal. *Grippo* v. *Davis,* 92 Conn. 693. Welles should have disqualified himself from participating in the proceedings.

Procedural irregularities aside, the reasons prompting the commission's decision are not supported by the facts appearing in the record. The change of zone was granted because it was deemed

that with the highway changes contemplated, the best use of the land is commercial and the change will benefit the community as a whole rather than the petitioners. The commission proceeded on the basis that the changes in the highway patterns were practically a fait accompli, whereas the letter from the state highway commissioner, the only basis on which the commission, by this record, could make an assumption, clearly dispels this assumption. The plans were preliminary. The change of highway was an action requiring the approval of a state agency and the obtaining of public funds, over which the zoning commission had no control. Indeed, the commission was clearly admonished that the status of the situation was not such that proposed improvement could be used as a guide. A change of zone which is dependent for its proper functioning on action, by other agencies, over which the zoning commission has no control cannot be sustained unless the necessary action appears to be not a possibility but a probability. No such probability appears in the record in this case. *Faubel* v. *Zoning Commission,* 154 Conn. 202, 211. Nor was there evidence to show that the community as a whole would benefit by the action of the commission. General Statutes § 8-2; *Vece* v. *Zoning & Planning Commission,* 148 Conn. 500, 503.

While the courts must be scrupulous not to hamper the activities of civic boards by indulging in a microscopic search for technical infirmities, scrutiny is always justified to prevent the improper use of the extraordinary police power upon which zoning rests. *Couch* v. *Zoning Commission,* 141 Conn. 349, 358.

The action of the commission was unreasonable, illegal and arbitrary.

The appeal is sustained.