[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This consolidated appeal involves the efforts of the plaintiff, 1070 North Farms Road, LLC ("North Farms") to obtain a special permit and site plan approval from the defendant, the Wallingford Planning Zoning Commission ("the Commission") for the construction of a wholesale auto auction facility in an IX (Industrial Expansion) District.
North Farms submitted an application (#407-98)* to the Commission on or about April 8, 1998. The Commission held a public hearing on said application, opening on July 13, continuing on August 10 and August 31, and concluding on September 9, 1998. On September 9th, following the close of the public hearing, the Commission voted (4-1) to deny the said application. An appeal (CV 98-0417766) to this Court followed.
While the said appeal was pending, the plaintiff filed a second application (#431-98)* with the Commission for special permit and site plan approval for construction of an auto auction facility at the same site. The said appeal to the Court was continued pending the Commission's decision on the second application, as approval by the Commission of the second application would obviate the I need to decide the Court appeal.
The second[1] application was filed on or about October 8, 1998. The Commission held a public hearing on this application, opening on December 7, 1998, continuing on January 11, 1999 and concluding on February 1, 1999. On March 8, 1999, the Commission voted (4-1) to deny the said application. An appeal (CV 99-0424544) of this denial was taken to this Court and the two appeals were consolidated. A hearing on the consolidated appeal was held on May 16, 2000, at which the plaintiff was found aggrieved for purposes of prosecuting this appeal.
 II
The subject property covers 43.7 acres and is part of an 88 acre tract owned by the plaintiff. The tract is in the northeast sector of Wallingford, to the west of 1-95. It is located at the intersection of Northrop Road, North Farms Road and Murdoch Avenue on the Wallingford-Meriden line. The property is bounded by Northrop Road to the east and north, by North Farms Road to the west and north and by an Interchange (1-5) District to the south.
Opposite a proposed entrance to the auto auction, on the Meriden side of the town line, is a warehouse owned by Flexo Converters, USA, Inc. Facing the property on North Farms Road are one or more residences. At least one residence is in an RU-18 District, where residential is a CT Page 12483 permitted use. To the south, fronting North Farms Road, are several residences in an RU-40 District, where residential is a permitted use. There are eleven residences fronting Northrop Road, at some of which farming, a permitted use in the IX District, is conducted. Adjacent to the plaintiff's property on the south are one or more residences, a non-conforming use in the I-S zone. Other uses currently in operation along Northrop Road in an I-S District, include an office building and a school bus garage or depot and a Marriot Courtyard Inn. There are wetlands on the subject property but the project, as proposed, would have no need for inland wetlands permits.
The project at issue has a history. On January 14, 1996, the Commission, at the behest of the plaintiff's owner, amended the Wallingford Zoning Regulations ("Regulations") to allow auto auctions by special permit in the IX District. The plaintiff filed an application for special permit for an auto auction facility on July 3, 1996. This application was denied on December 9, 1996. On or about April 4, 1997 the plaintiff filed a second application but withdrew it in September, 1997.
A third application, (#407-98) duly followed, and after its denial, a fourth application (#431-98). It is these two most recent applications which are before the Court. The chronology of these latter two applications, the subject of this consolidated appeal, is given, supra, In addition, on October 26, 1998, the Commission amended the Regulations to remove auto auctions as a use permitted by special permit in the IX District.
 III
The auto auction facility, as proposed by the applicant, would be a wholesale operation, selling at auction automobiles turned in for resale by automobile dealers, manufacturers or leasing companies. It would be open and available only to licensed automobile dealers. Typically, some 250 dealers would be expected to attend an auction. It is anticipated that the clientele would be regional, attracting some out-of-state clients in addition to those operating in Connecticut. Vehicles would either be driven or transported by flatbed trucks, or auto carriers (semi-trailers) to and from the site. Vehicles would be brought in, stored, cleaned and moved to one of five bays for auction, moved to a storage area pending completion of sale, and then driven or transported away. The applicant anticipated one auction per week, with some eight hundred vehicles offered and some five hundred sold on a given day. Vehicles for auction would be arriving and departing Monday through Friday, with the busiest days anticipated to be auction day, the day prior and the day following. In its most recent proposal (#431-98) building square footage was increased from 40, 000 to 59, 925 and parking CT Page 12484 spaces for auction vehicles reduced from 975 to 856. The business would employ some 28 people full-time, with an additional 126 people employed on auction days, including auto handlers, auctioneers, restaurant employees and State Motor Vehicle Department employees. An additional 340 parking spaces would be provided for employees and visitors (Return of Record, #5p)[2] The applicant proposed two entrances opening on Northrop Road, the northerly entrance to be used principally by employees and dealers and the southerly for the delivery and shipment of auction vehicles. The applicant proposed to configure the southerly entrance to discourage left (northerly) turns by departing vehicles and to discourage right turns into the entrance from vehicles approaching from the north. These, with other measures, were proposed to channel traffic to enter Northrop Road at its intersection with Route 68 and proceed northward on Northrop Road, minimizing the use of North Farms Road, and minimizing traffic proceeding south from Meriden on Northrop Road. The applicant anticipated the overwhelming volume (@94%, Return of Record, #10vv, p. 13) of arriving traffic would exit 1-91 at Route 68, proceed west on Route 68 to Northrop Road, then north to the site entrance, with departing traffic reversing the process. (Return of Record, #16).
 IV
The subject property is in an Industrial Expansion (IX) District. Under the Wallingford Zoning Regulations as in effect at the times of filing of the applications at issue, "Auto Auctions" were a permitted use requiring approval of a Special Permit in accordance with Regulations, Section 7.5. (5. 4.9.C). Regulations, S. 4.9.C.5 requires that an auto auction contain not fewer than 35 acres; have building(s) dedicated exclusively to the wholesale facility containing not less than 25, 000 square feet; and open space of not less than 30 percent of the entire site. It is undisputed that the subject applications met these requirements.
Under Regulations, S.7.5.B the Commission must consider and evaluate an application for special permit by applying, at a minimum, certain enumerated criteria.
These criteria include:
a. The size and intensity of the proposed use or uses and its or their effect on and compatibility with the adopted Plan of Development, the specific zone and the neighborhood; . . . .
c. The capacity of adjacent streets to handle peak traffic loads and hazards created by the use; . . .
h. The preservation of the character of the neighborhood; CT Page 12485
The plaintiff construes the action by the Commission, in applying the criteria of S. 7.5.B.1 to the subject applications as impermissibly acting "legislatively", rather than administratively, that is, by denying the special permits sought, effectively amending "auto auctions" out of the Regulations. The Court disagrees. It is precisely the application of the standards of S.7.5.B.1 to a special permit application that is required of the Commission and it is this requirement which distinguishes a permitted use as of right from a permitted use by special permit. "The basic rationale for the special permit [is] . . . . that while certain [specially permitted] uses may be generally compatible with the uses permitted as of right in particular zoning districts, their nature is such that their precise location and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site . . . ." Center Shops of East Granby, Inc. v. Planning ZoningCommission, 253 Conn. 183, 191-92 (citation, omitted); T. Tondro,Connecticut Land Use Regulation, p. 78. When considering an application for a special permit, the commission is called upon to make a decision as to whether a particular application, would be compatible with the particular zoning district, under the circumstances then existing,Barberino Realty Development Corp. v. Planning Zoning Commission,222 Conn. 607, 614. In applying the criteria of regulations, 57.5.B.1 to an application for special permit, the Commission acted administratively and properly.
Elsewhere the plaintiff claims that the Commission improperly attempted to rescind, through the special permit process, the 1996 amendment to the IX District regulations that allowed auto auctions. This claim, too, is without merit.
 V
Judicial review of the Commission's decisions is limited to a determination of whether the decision was arbitrary, illegal or in abuse of discretion, Whitaker v. Zoning Board of Appeals, 179 Conn. 650, 654. The Commission is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield, 217 Conn. 164, 169. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission, 189 Conn. 261,266. However, a court cannot take the view in every case that the discretion exercised by the local zoning authority cannot be disturbed, for if it did the right of appeal would be empty, Daughters of St. Paul, Inc. v.Zoning Board of Appeals, 17 Conn. App. 53, 57 (citation, quotation marks CT Page 12486 omitted).
A special permit allows a property owner to use his property in a manner expressly permitted by the regulations, Housatonic TerminalCorporation v. Planning Zoning Board, 168 Conn. 304, 307 (citation omitted). When considering an application for a special permit, a zoning authority acts in an administrative capacity and its function is to determine whether the proposed use is permitted under the regulations and whether the standards set forth in the regulations are satisfied. It has no discretion to deny a special permit if the regulations and statutes are satisfied, Daughters of St. Paul. Inc. v. Zoning Board of Appeals,
supra, at 56 (citations omitted). However, "[a]lthough it is true that the zoning commission does not have discretion to deny a special permit when the proposed use meets the standards, it does have the discretion to determine whether the proposal meets the standards set forth in the regulations," Irwin v. Planning Zoning Commission, 244 Conn. 619, 628.
Where the Commission states its reasons for a decision the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the Commission is required to apply under the zoning regulations, Irwin v. Planning Zoning Commission, supra, at 629. When, as here, the Commission acts in an administrative capacity, the evidence to support any such reason must be substantial, Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission,232 Conn. 122, 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. InlandWetlands Agency, 226 Conn. 579, 588 (citations, quotation marks omitted).
 VI
In denying the subject applications the Commission stated its reasons, which were substantially the same in both cases:
The reasons for denial were: "In part because of a lack of appropriateness of location and use as specified in Section 7.5.B.1.a through k. of the Wallingford Zoning Regulations and specifically:
1. The proposed project could significantly alter the character of the surrounding neighborhood and could lessen the ability to further develop the surrounding properties in the IX Zone to the full CT Page 12487 potential as outlined in Wallingford's Plan of Development.
2. The lack of compatibility with the surrounding development and uses.
3. The lack of existence of other uses of the same character in the surrounding neighborhood in the IX Zone.
4. The inability of the Town to regulate activities in the auto auction to include: Test driving of cars on the roads; the hours of the auto auctions; the number of cars to be auctioned during each day; and the type, the conditions, and the age of the vehicles to be auctioned.
5. Inability of the applicant to demonstrate all roadway improvements to include utility shelves and snow shelves as recommended and required by the Town Engineer could be completed in a manner to ensure that Northrop Road could accommodate peak traffic loads and/or potential hazardous conditions created by the proposed use.
6. Due to the specific location of the auto auction at the entrance to the IX Zone, the project could discourage development of the surrounding parcels
7. Finally, to include a reason for denial the comments and concerns of all the members of the Commission who expressed concern with respect to this application." (Return of Record, CV-99-0424544, Exhibit #14; compare with Exhibit 10yy, September 9, 1998 motion, p. 17).
 VII
The plaintiff claims the Commission acted illegally in denying the said applications in that there was not substantial evidence in the record to support the reasons for denial advanced by the Commission; that the Commission acted beyond the scope of its authority in requiring off-site road improvements outside the Town-designated right of way; and that the pattern of activities surrounding the consideration of the plaintiff's auto auction application establish the existence of a broad-based predisposition against the applicant.
The plaintiff fairly characterizes four of the reasons (nos. 1, 2, 3 and 6) for denial given by the Commission as alleging incompatibility of the proposed use with the neighborhood. To determine if there was substantial evidence in the record to support such a conclusion the Court first must determine what is the neighborhood, and then what are its characteristics. The applicant claims the neighborhood is the IX District and, by clear implication, that the Commission is precluded from considering the impact of the use on property outside the District. This CT Page 12488 stance is in conflict with S. 7.5.B.1.a, which requires the Commission to consider the impact of the proposed use both on "the specific zone" and on "the neighborhood." Moreover, the applicant is not consistent in limiting the neighborhood to the IX District. For example, in arguing compatibility, the applicant cites its proximity to the Flexo operation, located not only outside the IX District but in another town. The applicant's appraiser includes eleven North Farms Road properties in his analysis of the impact the subject project would have in the areas in general proximity to the site (Return of Record, #10aaa). Counsel for the applicant stated, "we all can agree that someone across the street is a neighbor", referring to Flexo (Return of Record, #6, December 7, 1998 hearing, p. 2). This would seem to be equally true of the residences fronting North Farms Road from its intersection with Northrop Road south to Route 68. The Court finds that the neighborhood, as the term is used in the Regulations, includes residences in the RU-18 and RU-40 Districts, fronting on North Farms Road, and that the Commission could properly consider the impact of the proposed auto auction on these neighbors. What are the characteristics of the neighborhood? The appraiser describes the "outer neighborhood" as "a mixed use, industrial, commercial and residential sector of the community". Along Northrop and North Farms Roads are "some single family dwellings interspersed among large tracts of open and undeveloped land. Some of these parcels of land are part of active farm enterprises". The appraiser notes that a developed residential neighborhood exists to the north of the site, primarily within the City of Meriden. The Court finds that the neighborhood is a mixed use, industrial, commercial and residential neighborhood, including farming operations in the IX District and residential permitted uses along North Farms Road, including residences located across the street from the auto auction site. The Court finds that the Commission was entitled to take into consideration the impact of the proposed use on both farming operations and the North Farm Road residences.
 VIII
The applicant insists its use is compatible with the other industrial uses in the IX District. The applicant claims an auto auction would be a use less intense than an office building or warehouse on the same site. It offered information concerning the operation of a larger auto auction in East Windsor as a basis for comparison with its proposed use. It presented expert testimony, supported by a peer review commissioned by the Commission, that Northrop Road, with improvements, could handle peak traffic loads and hazards created by the use. The traffic expert estimated peak hour traffic on auction day to be 115 vehicles in the a.m. and 242 vehicles in the p.m. and rated the level of service at key intersections as B or A. (Return of Record, #1d; #5hhh). The applicant CT Page 12489 claims the incompatibility of its use to non-conforming residential uses in the IX District merely illustrates the compatibility of an auto auction with other permitted industrial uses in the IX District.
The Court finds that there is substantial evidence in the records of both appeals to support the Commission's reasons for denial of both applications; specifically, evidence to support the conclusions that the proposed project could significantly alter the character of the surrounding neighborhood; and the lack of compatibility with the surrounding development and uses. It is clear from the comments of commission members (Return of Record, #13) that their concerns (incorporated by reference by reason no. 7) regarding lack of compatibility included the capacity of adjacent streets to handle peak traffic loads as well as hazards created by the use, and included the potential impact on the North Farms Road residential uses of increased traffic occasioned by the use, including flatbeds and auto carriers on this unimproved "country road". A review of the record shows a widespread concern on the part of neighbors that auto purchasers would utilize North Farms Road and other neighborhood streets for "test driving" purchased vehicles : The applicant contented itself simply by saying it wouldn't happen on-site. The Commission was free to credit the submission of Gary Linsley regarding the likelihood of such testing occurring (Return of Record, #10s). Chairman Austin articulated this concern (Return of Record, #13, p. 6), which was incorporated by reference in reason #7, and the Commission was free to factor that concern into its denials.
The Commission, in reaching its decisions, could rely on testimony presented, expert and lay, staff opinions, knowledge of the project acquired from considering past applications, and members' knowledge of the neighborhood. Commission members were entitled to give testimony, expert or lay, the weight they chose. Commissioners could accept estimates testified to by experts, while rejecting such experts' conclusions. Further, determining traffic impacts or compatibility with a neighborhood are not such exact sciences as to override, much less obliterate, evidence to the contrary provided by laypersons, personal knowledge and common sense. There was substantial evidence in the record to support the Commission's conclusions that the proposed use would alter the character of the neighborhood and lacked compatibility with surrounding uses, by virtue of the traffic impact, including hazards created by the use.
In its applications the applicant described the operation of an auto auction, its expected flow of traffic, submitted drawings and sketches to reinforce its site plan and described the East Windsor facility. In concluding that the use proposed was incompatible with the neighborhood, the Commission could rely on substantial evidence in the record, CT Page 12490 including, eg., testimony and submissions by an opponent, Louis R. Maglione (Return of Record, #11, pp. 23ff; #10ww, p. 14), challenging claims of the applicant; Maglione also testified regarding his visit to, and submitted photographs taken at the East Windsor auto auction (Return of Record, #10kkk; #31, pp. 7-8) as well as information concerning an auto auction in Mannheim, Pennsylvania (Return of Record, #10q); testimony submitted by Gary Linsley on the operation and characteristics of an auto auction (Return of Record, #10s); there was also testimony from Tom Wall, regarding his current farm operation in the neighborhood (Return of Record, #6, pp. 12-13; #10ww, p. 17); again from John O'Neill (Return of Record, #11, p. 27, as one familiar with auto auctions and with the East Windsor facility; from Rod DuBois, (Return of Record #10ww, p. 19) raising traffic safety concerns with regard to school buses sharing the roads with car carriers.
If even one of the reasons given by the Commission for denial is supported by substantial evidence in the record, the Commission's decision must be sustained. The Court finds there is substantial evidence in the records of both appeals to support the Commission's reasons given; that the proposed project could significantly alter the character of the surrounding neighborhood; and the lack of compatibility of the proposed use with the surrounding development and uses.
 IX
With regard to the claim that the Commission acted outside the scope of its authority in requiring off-site road improvements outside the Town-designated right of way, it should be borne in mind at the outset that we are not dealing with an approval of a special permit, subject to conditions alleged illegal; the Commission in its decision imposed no conditions on the plaintiff Rather, the Commission denied the applications for special permit. In the course of the proceedings at issue, the plaintiff proved to be extraordinarily accommodating. Each time a concern was raised, by commission staff, commissioners, or opponents, the plaintiff returned with proposals designed to alleviate such concerns.
A salient example is the issue of road improvements. Ultimately, the applicant agreed to effect road improvements along some 5, 758 linear feet of Northrop Road. The Town Engineer concluded that a 36 foot right of way would be required. Some Northrop Road residents claimed the Town did not have sufficient right of way to accommodate the improvements. The Town Engineer and Town Counsel indicated that sufficient right-of-way could not be established along some 400 feet of the section of Northrop Road at issue.
CT Page 12491 This was clearly the genesis of reason no. 5: "Inability of the applicant to demonstrate all highway improvements to include utility shelves and snow shelves as recommended and required by the Town Engineer could be completed in a manner to ensure that Northrop Road could accommodate peak traffic loads and/or potential hazardous conditions created by the proposed use."
In light of the court's findings, supra, supporting the Commission's decision, there is no need to decide whether reason no. 5, standing alone, would suffice to justify the Commission's denials of the subject application.
Reasons for denial nos. 4 and 5, supra, comprise a litany of the concerns the Commission majority had with the proposed auto auction. It is apparent from the record that the Commission, having considered proposed conditions, concluded that it lacked the authority to impose certain conditions, and decided that no conditions it legally could impose could bring the applications into conformity with the standards set forth in the Regulations. Such conclusion did not render the Commission's denial of the applications illegal.
 X
The plaintiff also claims that the Commission"s denial was illegal by reason of predisposition, the plaintiff alleging that, "The Commission members who voted for the denial were predisposed as evidenced by the breadth of political pressure, the handling of the hearings, their comments during the hearings, the specious reasons given by them for denial, and their decision to delete an auto auction as a permissible use in the IX Zone prior to hearing the plaintiff's special permit application." (Revised Appeal). The plaintiff cites Marmah v. Greenwich,176 Conn. 116, in support of its claim. For reasons stated below, the Court concludes that the plaintiff has failed to meet its burden of establishing predetermination on the part of the Commission and its members.
As to the claim of "specious reasons" given for denial, this Court has determined that one or more reasons given by the Commission were valid and supported by substantial evidence in the record. This claim, accordingly, is rejected. As to the handling of the hearings, the Court, after review of the record, concludes that in the hearings on both the applications under review, the Commission's Chairman made every reasonable effort to afford the plaintiff the opportunity to be heard and to respond to any assertions of opponents and that the plaintiff indeed was afforded ample opportunity to be heard and took full advantage of that opportunity. The consideration given by the Commission to the applications CT Page 12492 at issue was anything but "casual and perfunctory", Marmah v. Greenwich,
supra, at 118. In a situation where, clearly, emotions ran high, the Chairman exhibited patience and courtesy to all, admonished opponents to restrain their behavior and maintained control of the hearings. As to comments of commission members, some members raised their concerns with aspects of the applications, questioned the plaintiff's representatives intensively and extensively. "The law does not require that members of [land use] commissions must have no opinion concerning the proper development of their communities." Furtney v. Zoning Commission,159 Conn. 585, 594; Woodburn v. Conservation Commission,37 Conn. App. 166, 175. The comments of commission members, separately or taken together, at the various public hearings, do not establish predetermination on the part of any commission members. Further, the vote by the Commission, acting legislatively, in another proceeding, to amend the regulations to exclude auto auctions as a permitted use by special permit in the IX District, does not establish predetermination in either of the proceedings under review. In contrast to Marmah, where the defendant argued that a subsequent amendment to the regulations rendered the plaintiff's appeal moot, no such claim was raised in this appeal. Here, it was clear to all that the Commission's action in amending the regulations did not render the plaintiff's application (#431-98) moot. Nor does the denial by the Commission of the plaintiff's prior applications for the same use establish predetermination. Were that the case, an unsuccessful applicant need simply to modify and re-file an application and claim predetermination should the commission again reject it. We presume members of a local land use commission act fairly and with proper motives. The plaintiff has failed to establish that the commission members, or any of them, had "made up their minds that they were going to disapprove the plaintiffs' plan regardless of any evidence or argument presented at the public hearing. Only such a finding could support the conclusion that the commissioners had crossed the line between permissible formulation of a tentative opinion and illegal prejudgment of the issue."Daviau v. Planning Commission, 174 Conn. 354,358 (citations omitted).
The plaintiff's claim appears, in part' to be a variant of the res ipsaloquitur doctrine. namely: there was widespread public opposition to the applications at issue; opponents attending the public hearings were "rowdy" and "raucous"; local politicians rose in opposition to the applications; F the Mayor, in the course of the proceedings wrote to the Commission, opining that the use at issue didn't belong in the IX District and asking the Commission to amend the Regulations to exclude auto auctions from the uses permitted by special permit; the Town Council (which appoints members to the Commission), passed a resolution opposing the project; the President of the Town Council attended the hearings, and spoke on several occasions in opposition to the proposals; ergo, the Commission members were intimidated and predisposed to vote to deny said CT Page 12493 applications, regardless of the evidence presented. The Court is not persuaded.
Neutrality and impartiality of members are essential to the fair and proper operation of a planning and zoning commission, Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, (citation omitted). The burden of proving predetermination is, of course, on the plaintiff, Schwartz v. Hamden, 168 Conn. 8, 17. There is a presumption that administrative board members acting in an adjudicative capacity are not biased, O G Industries, Inc. v. Planning Zoning Commission,232 Conn. 419, 429. To overcome such presumption, the plaintiff must demonstrate actual bias, rather than mere potential bias of the board members challenged unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable, Id. (quotation marks, citations omitted). The decisive question, therefore, is whether the Commission members actually had made up their minds prior to the public hearing, regardless of any arguments that might have been advanced at the hearing, Cioffoletti v. Planning Zoning Commission, supra, at 555 (citation omitted). For reasons stated below, the Court finds the plaintiff has failed to meet its burden.
At the outset, it should be said that there was nothing improper in the Mayor's stating his position and calling for an amendment to the regulations. It is a proper function for the Mayor to take a position on the issues, Schwartz v. Hamden, supra, at 16. "The Mayor, as the chief executive officer of the Town, was in duty bound to express to the public and to local administrative boards what he believed to be in the best interests of the community, Id. (citation omitted)."We take judicial notice of the uniform practice in this country of mayors and other chief executives, especially when popularly elected, to become the principal proponents for legislative change." Ghent v. Zoning Commission,220 Conn. 584, 588. Similarly, the Court finds no impropriety in the Town's legislative body, the Town Council, taking a position on an issue of public importance. Finally, after review of the record, the Court finds no impropriety in the participation of the Town Council President, Parisi, in the hearings. He was entitled to be present. He was entitled to speak and express his opinion. Parisi spoke several times, strongly in opposition to the subject applications. The Court has reviewed his comments and finds nothing in them to support the plaintiff's claim of impropriety such as to constitute intimidation of commission members. (See, eg., Return of Record, #10rrr)
Not infrequently, land use applications engender controversy. On occasion, participants at public hearings on such applications may be seen as "rowdy" or "raucous." Nonetheless, "Hearings play an essential role in the scheme of zoning and in its development. 1 Yokley, Zoning Law CT Page 12494 Practice(2d. Ed.) P. 267.They furnish a method of showing to the commission the real effect of the proposed changes upon the social and economic life of the community. Id., p. 268. Hearings likewise provide the necessary forum for those whose properties will be affected by a change to register their approval or disapproval and to state the reasons therefor." Couch v. Zoning Commission, 141 Conn. 349, 357 (citation omitted).
Finally, the plaintiff introduced evidence (Return of Record, #59) concerning an unrelated application for special permit by Home Depot in an effort to demonstrate disparate treatment of an applicant facing problems similar to the plaintiff regarding off-site road improvements, and, the plaintiff asserts, demonstrating bias on the part of the Commission. Again, the Court is not persuaded. The Home Depot application concerned another project at another site and simply does not establish that the Commission was biased against our plaintiff.
The plaintiff has failed to establish, by a fair preponderance of the evidence, that the "commission members who voted for denial were predisposed as evidenced by the breadth of political pressure, the handling of the hearings, their comments during the hearings, the specious reasons given by them for denial, and their decision to delete an auto auction as a permitted use in the IX Zone prior to hearing the plaintiff's special permit application"
 XI
The Court finds the plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant Commission, in denying the subject applications, acted illegally, arbitrarily or in abuse of discretion in that there was no substantial evidence in the record to support the reasons for denial advanced by the Commission; that the Commission acted beyond the scope of its authority in requiring off-site improvements outside the Town-designated right of way; and that the commission members voting for denial had predetermined the outcome of the applications.
Accordingly, both appeals are dismissed, and judgment may enter for the defendant, the Wallingford Planning Zoning Commission in and in No. CV 99-0424544.
By the Court
Downey, JTR